[No. 13145.   *En Banc.*   April 29, 1916.]

THE STATE OF WASHINGTON, *on the Relation of Joseph Lopas et al., Respondents,* v. HENRY SHAGREN *et al., Appellants.*[1]

COUNTIES—OFFICERS—COUNTY OR STATE—GAME COMMISSION AND WARDENS—STATUTES. The fact that the game code of 1913 (3 Rem. & Bal. Code, § 5395-1 *et seq.*) refers in the title and body of the act to "county game commissions" and "county game warden," does not necessarily make them county officers, within Const., art. 11, § 5, requiring the legislature to provide for the election of county officers; and in view of the fact that they are appointed by and under the supervision of state officers, and may be transferred on official business "from one county to another," the legislature must have intended to make them state and not county officers.

GAME—OFFICERS—COUNTY OR STATE—COMMISSIONS AND WARDENS —STATUTES. The functions of the county game commissions and county game wardens, being the protection and propagation of game birds, animals and fish, the title to which is in the state and the protection of which is within the police power of the state, and their functions not relating exclusively to matters of local concern, the county game commissions and wardens are state and not county officers, within Const., art. 11, § 5, requiring the legislature to provide for the election of county officers; hence the game code (3 Rem. & Bal. Code, § 5395-2) providing for their appointment is constitutional.

Appeal from a judgment of the superior court for Whatcom county, Pemberton, J., entered June 8, 1915, in favor of the plaintiff, in mandamus proceedings, tried to the court. Affirmed.

*Walter B. Whitcomb,* for appellants.

*The Attorney General* and *Edward W. Allen, Assistant,* for respondents.

MAIN, J.—This action was instituted in the superior court for the purpose of securing a writ of mandate, directed to the board of county commissioners, requiring that board to

[1]Reported in 157 Pac. 31.

audit and allow a claim against the county game fund. The relators were the members of the county game commission in their representative capacity, and the owner of the claim. The trial resulted in a judgment directing that the writ of mandate issue. From this judgment, the appeal is prosecuted.

The controlling question is whether the members of the county game commission and the county game warden are county officers, under the game code, Laws of 1913, ch. 120, p. 356 (3 Rem. & Bal. Code, § 5395-1 et seq.).

The county game commission and the county game warden are not elective, but are appointive officers. The constitution, art. 11, § 5, requires that the legislature shall, by general and uniform laws, provide for the election in the several counties of the state of certain specified officers, "and other county . . . officers, as public convenience may require, and shall prescribe their duties and fix their term of office." Among the specified officers, a game commission or a game warden is not mentioned, and if such officers are county officers, it is by reason of the fact that the legislature has created such offices.

It will first be necessary to look into the game code to ascertain from its provisions whether the legislature had in mind the creation of county offices when they provided for the county game commission and the county game warden; and if it shall appear that it was not the legislative intent to make these offices county offices, then the inquiry must be directed to the question whether the functions that such officers perform are county or state functions.

Giving attention to the first question, it will be noted that the title of the act refers to "county game commissioners," and "the office of county game wardens." Section 1 (Id., § 5395-1) of the act provides that a county game commission "is hereby created." This commission consists of three residents of each county. Running through the other sections of the act, and more particularly in § 2 (Id., § 5395-2),

there are frequent references to the "county game commis-. sion," and the "county game warden." While the commission is referred to as a "county" game commission and the warden as a "county" game warden, it does not necessarily follow from this terminology that the offices are county offices. The phraseology may only refer to the geographical limits within which the duties of the offices are to be exercised, and not to the nature or grade of the office. *Leib v. Commonwealth,* 9 Watts (Pa.) 200; *State ex rel. Buchanan County v. Imel,* 242 Mo. 293, 146 S. W. 783; *State ex rel. Ward v. Romero,* 17 N. M. 88, 125 Pac. 617. In the case first cited, though not speaking with reference to a game commission or a game warden, but with reference to another office, though the principle is the same, it was said:

"It is also true that the constitution and laws, in speaking of the courts of Common Pleas, term them at different times the Courts of Common Pleas 'in each county,' 'of each county,' and 'within each county.' But the phraseology seems to re-, fer to the geographical limit within which the duties of each are to be exercised, and not the nature or grade of the office."

The mere fact, then, that the game commission is referred to as the county game commission, and the game warden as the county game warden, does not necessarily make the officers holding such positions county officers. To determine whether the legislature intended that they should be county officers, it is necessary to look further into the act.

Section 2 (Id., § 5395-2) of the act provides for a chief game warden and a chief deputy game warden, to be appointed by the governor. These officers are unquestionably state officers. The game commissioners in the counties west of the Cascade mountains are to be appointed by the chief game warden; and those east of the mountains by the chief deputy game warden. These appointments are to be made upon the recommendation of the county commissioners of each county; but in case the county commissioners fail to recommend game

commissioners for appointment upon the request of the state game wardens within ten days after written notice so to do, then and in that case, the chief game warden may appoint in counties west of the Cascade mountains, and the chief deputy may appoint for counties east of the mountains. The game commission in each county appoints a county game warden and fixes his salary, to be paid "solely out of the money received from county game licenses and fines." This section also provides that the state game warden and the chief deputy game warden, "shall have general supervision and control of the county game wardens and county deputy wardens, and may transfer them on official business from one county to another whenever in their judgment it is advisable so to do."

Section 3 (Id., § 5395-3) of the act requires the county game wardens to report to the state wardens, and provides that "the chief game warden and the chief deputy game warden, the game commissions and the county wardens shall have jurisdiction to enforce all of the laws of the state relating to game birds, game animals and game fish."

From these references to the statute, it will be seen that the members of the county game commission are appointed by state officers, and that the state game wardens have supervision and control over the county game wardens, and may transfer them on official business "from one county to another." The act fixes no term for the county game commissioners, or for the county game wardens. There being no term fixed in the act for such officers, the power to remove may be exercised by the appointing power at pleasure.

In Throop on Public Officers, § 304, it is said:

"Where an office is filled by appointment, and a definite term of office is not fixed by a constitutional or statutory provision, the office is held at the pleasure of the appointing power, and the incumbent may be removed at any time."

There are provisions in the act other than those mentioned which would seem to indicate that it was the legislative intent to create county offices. There are also provisions in

the act not referred to which would lend support to the view that it was not the intention of the legislature to create county offices. When all the terms of the act are considered, it seems reasonably plain to us that the legislature did not intend that the game commissioners and the game wardens of the various counties should be county officers. The legislature must have had in mind the constitutional provision requiring county officers to be elected, and it is reasonable to presume that it did not intend to violate this provision of the constitution. The fact that the state game wardens have the power to appoint and the power to remove and the right to transfer the county game wardens from one county to another, would indicate that the legislative thought was that the offices created by the act were not county offices.

The next inquiry is whether the functions to be performed by the county game commissions and the county game wardens are county functions. If the functions of these offices relate exclusively to the local concerns of particular counties, then they are county offices, notwithstanding the legislature may have entertained a contrary intention. But if the functions of the offices created by the act concern the state at large or the general public, although exercised within definite territorial limits, they are not county offices. *Davock v. Moore*, 105 Mich. 120, 63 N. W. 424, 28 L. R. A. 783; 1 Dillon, Municipal Corporations (5th ed.), § 97. In the text of Dillon cited, the distinction between state officers and county or municipal officers is thus pointed out:

"And here it is important to bear in mind the before-mentioned distinction between *state* officers—that is, officers whose duties concern the state at large, or the general public although exercised within defined territorial limits—and *municipal* officers, whose functions relate exclusively to local concerns of the particular municipality. The administration of justice, the preservation of the public peace, and the like, although confined to local agencies, are essentially matters of public concern; while the enforcement of municipal by-laws proper, the establishment of local gas-works, of local water

works, the construction of local sewers, and the like, are matters which ordinarily pertain to the municipality as distinguished from the state at large."

The functions of the game commissions and the game wardens, as provided in the code, are the protection and propagation of game birds, game animals, and game fish. Is, then, the protection and propagation of game birds, game animals, and game fish a county function?

It is the settled doctrine in this state that title to all game belongs to the state in its sovereign capacity, and that the state holds this title in trust for the use and benefit of the people of the state. The state, through its legislature, has the right to control, for the common good, the killing, taking, and use of game. *Cawsey v. Brickey,* 82 Wash. 653, 144 Pac. 938; *Graves v. Dunlap,* 87 Wash. 648, 152 Pac. 532.

In the *Cawsey* case, it was said:

"Under the common law of England all property right in animals *ferae naturae* was in the sovereign for the use and benefit of the people. The killing, taking and use of game was subject to absolute governmental control for the common good. This absolute power to control and regulate was vested in the colonial governments as a part of the common law. It passed with the title to game to the several states as an incident of their sovereignty and was retained by the states for the use and benefit of the people of the states, subject only to any applicable provisions of the Federal constitution."

In the exercise of its police power, the state has the right to protect and control the game birds, game animals, and game fish within its borders. In *State v. Towessnute,* 89 Wash. 478, 154 Pac. 805, it was said:

"The police power is indispensable to any ·commonwealth, and . . . the right of regulating fish and game is a proper exertion of such a right."

Since the title to all game is in the state for the benefit of the people of the state, and the state has the right in the exercise of its police power to protect and cause to be prop-

agated, and to regulate the killing of such game, it would seem to follow that officers whose functions are the protection and propagation of game birds, game animals, and game fish, are not county officers. The functions of these officers do not relate to matters exclusively of local concern of the particular county, but do concern the general public, or the state at large.

It must be understood that the legislature, had it seen fit to do so, could have imposed upon the counties of the state, as the agencies thereof, the duty of protecting game within the respective counties, and have provided that the counties should elect and pay officers for this purpose. *State ex rel. Clausen v. Burr*, 65 Wash. 524, 118 Pac. 639.

A considerable discussion appears in the briefs over the question whether the county game commission and the county game wardens are exclusively state officers, or joint state and county officers or agents. But we find it unnecessary to determine this question for the reason that we are clearly of the opinion that such officers are not county officers within the constitutional provision mentioned.

The appellant cites, in support of the contention that the game commission and the county game warden are county officers, the cases of *State ex rel. Egbert v. Blumberg*, 46 Wash. 270, 89 Pac. 708; *State ex rel. Snodgrass v. Savage*, 47 Wash. 701, 92 Pac. 409, and *State ex rel. Armstrong v. Halliday*, 61 Ohio St. 171, 55 N. E. 175.

In the *Blumberg* case, it was held that the horticultural act, which was there under consideration, was unconstitutional, because it attempted to create the office of county fruit inspector, and did not make that office elective. But the terms of the horticultural act were materially different from those of the present game code. There, the term of office was fixed at two years, the salary of the officer at $4 per day, and the appointment was to be made by the county commissioners. The legislature in the act there under consideration, as shown by the terms of the act, had created a county office.

In the present case, we have found that the opposite intention prevailed.

In the *Savage* case, it was held that the act of the legislature, as found in the Laws of 1905, p. 349 (Rem. & Bal. Code, § 5322), which provides for the appointment of a game warden by the county commissioners, was unconstitutional. The game act there under consideration was similar in its provisions to the horticultural act in the *Blumberg* case, and without discussion, the decision in the *Savage* case is rested upon that in the *Blumberg* case.

In the *Halliday* case, it was held that a statute in Ohio which provided for the appointment of a fish and game warden in each county, was void, because such offices were county offices under the provisions of the statute there under consideration. The statute before the Ohio court was similar in its provisions to that of the horticultural act in the *Blumberg* case, and the game act in the *Savage* case.

The judgment will be affirmed.

MORRIS, C. J., MOUNT, PARKER, FULLERTON, ELLIS, HOLCOMB, and BAUSMAN, JJ., concur.