McDANIEL v. MOORE.

4-5123

Opinion delivered May 16, 1938.

*Jack Holt,* Attorney General, and *Millard Alford,* Assistant, for appellants.

*George R. Smith,* for appellee.

McHANEY, J. Appellants are the members of the State Civil Service Commission, the State Personnel Director, the members of the State Board of Public Welfare, the Chief Finance Officer of the Department of Public Welfare and Ruth Elezebeth Buzbee, County Director of Public Welfare of Dallas county. Appellee is a citizen and taxpayer of the state, residing in the city of Fordyce, Dallas county, and she brought this action against appellants to enjoin them from paying any salary to said Ruth Elezebeth Buzbee and the Welfare Board be enjoined from approving the appointment of any person or persons to the position of County Director of Public Welfare unless said appointees are on the eligible list for appointment to such position. The answer was a general denial. The case was tried on the following stipulation of facts: ''1. The plaintiff is a citizen and a taxpayer of the state of Arkansas, residing in the city of Fordyce, Dallas county, Arkansas.

''2. The defendants, Louis McDaniel, G. DeMatt Henderson, and E. P. Pyeatt, compose the State Civil Service Commission, appointed and acting under the provisions of act 15 of the Acts of 1937, and the defendant, K. O. Warner, is the State Personnel Director under said act.

''3. The defendants, Raymond Rebsamen, A. C. Oliver, Earle Street, John R. Newman, R. S. Wilson, Alex H. Rowell and Mrs. J. W. Velvin, compose the State Board of Public Welfare, appointed and acting under the provisions of act 41 of the Acts of 1937, and the defendant John Trumper is the Chief Finance Officer of the State Department of Public Welfare, one of his duties being the preparation of payrolls for said department.

''4. The plaintiff is a duly qualified social worker, with many years of experience in the field of public wel-

fare and social work. She was appointed and served in the Public Welfare Department of Dallas county, as created by act 26 of the Acts of 1935, until that act was repealed by act 41 of the Acts of 1937. When the latter act took effect on February 5, 1937, the plaintiff was appointed as County Director of Dallas county, and she served in that capacity until she was removed from office, as hereinafter stated.

"5. The salaries of the various County Directors are paid entirely from state funds at this time, from the appropriation made by act 277 of the Acts of 1937. The County Directors have no power nor duties except such as are designated by the State Commissioner of Public Welfare.

"6. The State Department, by resolution passed at a meeting of the State Board of Public Welfare, on February 18, 1937, established the following qualifications for the position of county director:

" 'The County Director shall have had four years in an accredited college, plus experience in a recognized social agency or an educational background which would give mature judgment, plus three years' experience in a field allied to that of administering public assistance, such as school teaching, public health work, local welfare activities, county demonstration work, home economics, etc.

" 'In making a selection in accordance with the above specifications, personality, judgment, tact, resourcefulness and physical condition of the applicant shall be considered.'

"7. Said qualifications were duly certified to the Civil Service Commission, which expended more than $6,000 in holding competitive written examinations on July 27, 1937, and oral examinations on later dates, for all positions created by act 41. The plaintiff took the examination for County Director and made a passing grade. Her name was, accordingly, placed on the eligible list for employment as a County Director.

"8. On November 20, 1937, the plaintiff was removed by the Dallas County Board of Public Welfare

from position as Dallas County Director, and the defendant Ruth Elezebeth Buzbee was appointed in her place. This appointment was approved by the State Board of Public Welfare, although the said Ruth Elezebeth Buzbee had not passed said civil service examination and was not on the eligible list for appointment as a County Director.

"9. The Attorney General of the state of Arkansas has rendered an opinion to the effect that the position of County Director is a county office rather than a state office, and, therefore, is not subject to the provisions of act 15 of the Acts of 1937. In view of the rendition of this opinion, it is useless to appeal to the Attorney General for proceedings by way of *Quo Warranto* for the removal of the defendant Ruth Elezebeth Buzbee.

"10. Under act 15, the appointing authority is required to fill a vacancy in the classified state service by selecting the appointee from the names of three persons on the eligible list which are certified to him by the State Personnel Director. It is impossible to tell what names would be certified as possible appointees to fill the vacancy created by her removal, and, therefore, it cannot be known who would be her successor. There is no assurance that the plaintiff would be appointed to said position, nor is she entitled thereto as a matter of right, although she is the only resident of Dallas county on the eligible list for employment as County Director.

"11. The State Department of Public Welfare obtains from the Federal Social Security Board a large part of the funds with which it carries on its welfare work for the relief and assistance of the people of Arkansas. As a condition to the allocation of funds to this state, the Social Security Act requires that the funds be administered by a single state agency or under the supervision of a single state agency, and the regulations promulgated by the Social Security Board require that said state agency select these employees according to personnel standards approved by it. The above qualifications for the position of County Director were established to

meet the approval of said Social Security Board, and they were approved by it in March of 1937."

It was also stipulated that Mrs. Moore would testify, if present, that: "Ruth Elezebeth Buzbee did not, at the time of her appointment as County Director of Dallas county, and does not now possess the qualifications for the office which were established by the State Department of Public Welfare. That the said Ruth Elezebeth Buzbee is not a graduate of an accredited college nor does she possess the experience in social or related work that is a qualification for said position of County Director."

And that Ruth Elezebeth Buzbee would testify: "That, at the time of her appointment as County Director of Dallas county, she possessed the qualifications for the office which were established by the State Department of Public Welfare on February 18, 1937, and that she now possesses these qualifications for this office.

"That she has had a total of one year of college work at Arkansas State Teachers College, at Conway, and Henderson State Teachers College at Arkadelphia. That she has had five years' experience as a teacher in Public Schools of Dallas county; that she is physically fit and possesses moral and personal specifications and qualifications for the position for which she was selected by the Welfare Board of Dallas county.

"That Mrs. W. A. Moore, plaintiff in this cause, was removed from office of County Director for Dallas county for the reason that, under the law, she cannot hold said office due to the fact that she is related by blood or marriage to Mrs. S. W. Adams, a member of the Welfare Board of Dallas county.

"That Mrs. W. A. Moore is not the only resident of Dallas county on the eligible list for employment as County Director, according to the list made public by the State Civil Service Director."

Also that K. O. Warner, State Personnel Director, would testify that said Buzbee is not now and never has been on the eligible list for the position of County Director of Public Welfare.

A decree was entered in accordance with the prayer of the complaint and the case is here on appeal.

Act 15 of the Acts of 1937, hereinafter referred to as the Civil Service Act, provides for Civil Service in this state. Paragraph 1 of § 1, provides: "(1) 'Civil Service' means all offices and positions of trust or employment in the service of the state, but not of local governmental subdivisions thereof, except offices and positions in the organized militia."

Concerning this provision, counsel for appellants make this statement: "Under this provision, it is agreed by all parties concerned in this lawsuit that if the Director of a County Welfare Unit is a county employee, then he would not be subject to the provisions of the Civil Service Act. If, on the other hand, he is, in fact, a state employee, then he would be subject to the provisions of the Civil Service Act."

This question must be determined by the provisions of act 41 of the Acts of 1937, which creates the Public Welfare Department, hereinafter referred to as the Welfare Act. This act was passed for the purpose of complying with the provisions of the Federal Social Security Act, so that this state might participate in the benefits of that act, which provides, among other things, that a state, in order to obtain such benefits, must provide a plan of administration by a single state agency or supervised by a single state agency. 42 USCA, § 302. Under the federal act the Social Security Board is given authority to make personnel requirements as to the employees of the state agency, and it has the power to stop allotments of federal funds if the state fails to meet or to continue the requirements of the Board.

As will be seen from the agreed statement of facts, the State Board, by resolution, established the qualifications set out in paragraph 6 for the position of County Director and that such qualifications were established to meet the approval of the said Social Security Board and were approved by it. Stipulation paragraph 11.

We are of the opinion that the trial court was correct in holding that county departments of Public Wel-

fare are mere geographical subdivisions of a single State Department of Public Welfare, and that county departments are mere agencies of the state department. When the whole Welfare Act is considered, this conclusion is inescapable. Section 9 of the Welfare Act reads as follows: ''County Departments. There shall be established in each county of this state a county department of public welfare, which shall consist of a County Board of Public Welfare, a County Director of Public Welfare, and such additional employees as may be necessary for the efficient performance of the welfare services of the county. With the approval of the State Department, two or more counties may, however, unite and form a District Department of Public Welfare, in which case the county boards concerned will together constitute the district board. The director and staff for the District Department shall be selected in the same manner as hereinafter provided for county personnel.''

Section 10 provides that the County Boards of five members shall be selected by the State Board and Commissioner of Public Welfare from a list of 15 names submitted by the five constitutional officers of the county, each submitting three names. Section 11 defines the duties of the County Boards, as follows: ''Duties of the County Boards of Public Welfare. (1) The County Welfare Board, after investigation by the staff of the county department, shall review the applications for assistance grants and recommend to the State Department its approval or rejection of such applications, and if approval, the amount of the grant to be made.

''(2) It shall be the duty of the County Board to provide separate and adequate space, equipment and utilities for the offices of the County Welfare Department.''

Section 12 defines the duties of the County Director, that he ''shall serve as the executive and administrative officer of the County Board and as the agent of the State Department.'' * * *

''He shall prepare annually a full report of the operations and administrations of the County Depart-

ment and submit such other reports and perform all other duties required of him by the State Department."

Section 13 provides in paragraph 1, that "The County Department shall be charged with responsibilities and activities as shall be determined and prescribed by the State Department."

Section 29 provides for appeals by applicants for assistance from the action of the County Board to the State Board.

From these and some other provisions of said act it seems clear that the County Directors are employees of the state, but if more is needed it is to be found in act 277 of 1937 in which the various County Directors are classified and their salaries fixed and sums appropriated for 75 County Directors, one for each county. They are paid by the state, and this is a very strong circumstance showing they are state employees. To be sure, the act refers to the county agencies as County Boards and County Directors, but we think this reference does not make them county officers, but was a convenient method of designation of separate branches of a single state agency, and to the geographical limits within which their official duties were to be exercised. In this connection it may be well to note that by § 9 of the Welfare Act, two or more counties may join together, thus forming a district department of Public Welfare. This is further evidence of the fact that the Legislature meant that county departments are mere geographical divisions of a single state agency, which may be enlarged at the public convenience. In 15 C. J. 482, it is said: "The mere fact that a person is an officer or that the district over which his powers and duties extend is coterminous with the county, or that the prefix 'county' is part of the legislative or constitutional designation of the office, does not necessarily make him a county officer."

A strikingly similar case to the one now under consideration is *State ex rel. Lopas* v. *Shagren,* 91 Wash. 48, 157 Pac. 31, in which that court had for determination the question of whether under the Game Code of Washington, the Legislature had in mind the creation of county

officers when they provided for the County Game Commission and the County Game Warden. The court held them state officers and not county officers. We do not quote from that opinion as to do so would unduly extend this, but it may be said the reasoning is quite convincing. Also it may be said, in line with that case, that the functions to be performed by the County Boards and the County Director are not merely of local concern, but that they concern the state at large, or the general public, even though exercised within restricted territorial limits, and are, therefore, state officers within the meaning of the Civil Service Act. There are other provisions of the Welfare Act leading to the same conclusion, but we think it unnecessary to detail them.

It follows from what we have said that the decree of the trial court is correct, and must be affirmed.

HUMPHREYS and MEHAFFY, JJ., dissent.