[No. 27691. Department Two. March 8, 1940.]

JOHN MASKULE *et al., Respondents,* v. THE STATE OF WASHINGTON, *Appellant.*[1]

*The Attorney General* and *Harry L. Parr, Assistant,* for appellant.

*Samuel L. Crippen,* for respondents.

[1]Reported in 99 P. (2d) 929.

STEINERT, J.—Five plaintiffs, joining in one complaint, brought this action to recover the unpaid portions of salaries alleged to be owing them under the requirement of an act fixing a minimum compensation for state employees. The action was tried by the court without a jury. During the progress of the trial, plaintiffs Blasing, Boeyan, and Fisk took a voluntary nonsuit. The court, after hearing all the evidence, made findings from which it concluded that plaintiffs Maskule and Crippen were entitled to recover. Judgment was entered, from which the state has appealed.

Laws of 1937, chapter 139, p. 510 (Rem. Rev. Stat. (Sup.), § 10890-1 [P. C. § 3547-13]), provides that every full-time employee of the state of Washington, or of any office, department or institution thereof (with certain exceptions not material here), who has been employed therein on a full-time basis for not less than six months, shall receive for his or her services a compensation of not less than one hundred dollars per month.

Appellant state contends, first, that respondents were county employees and not state employees, and therefore were not entitled to the minimum compensation prescribed by the statute.

Respondents were employed in the office designated Pierce county welfare department, in Tacoma. Maskule, who did general clerical work in connection with the divisions of public assistance and old age assistance, had continuous employment from December 1, 1936, to May 1, 1938. Crippen, who was connected with the division of old age assistance, had continuous employment from April 1, 1937, to the time of the trial. We are here concerned only with the period subsequent to the last mentioned date.

Respondents passed the merit examination required by the rules and regulations which had been adopted by the state department of social security pursuant to

the social security acts of 1937 hereinafter mentioned, and were duly certified by the department as eligible to continue in the positions which they then held. However, their actual appointment by which they retained their respective positions was made by the "administrator," designated in one of the 1937 acts as the person who was to administer public assistance in the county.

The salaries of respondents were paid by checks issued by the state treasurer, but amounted to less than one hundred dollars per month. Crippen's mileage expense was paid in the same manner.

On April 1, 1937, an act creating the state department of social security became effective. Laws of 1937, chapter 111, p. 442 (Rem. Rev. Stat. (Sup.), §§ 10760-2, 10785-1 [P. C. § 6233-21] et seq.). That act directed that the department be organized into, and consist of, six divisions, and be in charge of the chief executive officer thereof, who was designated as director of social security. The director was authorized to make such rules and regulations as should be necessary to carry out the powers and duties of his office. He was further authorized to exercise all the powers and perform all the duties theretofore vested in, and required to be performed by, the department of public welfare, or which in the future should be conferred in respect to the administration of general public assistance or old age assistance. The director was also made the responsible state officer for the administration and disbursement of all funds received by the state in connection with old age assistance, and for all other matters included in the Federal social security act approved August 14, 1935. The Washington act creating the state department of social security expressly abolished the department of public welfare theretofore existing, but specified that such abolish-

ment should not affect the powers conferred, or the duties required, by the statutes under which the public welfare department and its divisions had been created, nor should it affect the validity of any act performed before April 1, 1937.

On the same day, April 1, 1937, there also became effective an act having particular reference to social security, division of public assistance. Laws of 1937, chapter 180, p. 697. The scope of that act was indicated in its title as providing for general public assistance for the relief of the poor, aged, sick, and other handicapped individuals, defining the powers and duties of the department of social security in relation thereto, and providing for the administration thereof through boards of county commissioners under the supervision of the state department.

The purpose of that act, as declared in its first section, was, among other things, to establish a single administrative agency which would preserve local autonomy in its administration, and would, at the same time, retain the state-wide supervision necessary to "equity, uniformity, and the adherence to rules and regulations of the Federal government." Public assistance was defined as Federal, state, and county aid for the assistance of certain individuals of the state as set forth in the act, and was declared to be the several and joint responsibility of the state and its political subdivisions.

The department of social security was empowered to serve as the single state agency in the administration of all public assistance programs originating under the jurisdiction of the Federal government, to exercise such supervision and promulgate such rules and regulations as should be necessary in order to assure full compliance with the terms of Federal grants, to fix state-wide uniform standards for all public assistance,

and to effect uniform observance of such standards. The act made it the duty of the director of the department, with the approval of the state advisory committee, to establish a merit system which was to provide fair and equal opportunity for persons to qualify for appointment to positions in the administration of the act. At the same time, the director was empowered and directed to exercise such other and further supervision of all public assistance activities as might reasonably seem necessary to an effective administration of the act.

By subsequent sections, a coordination between the state and local bodies was effected. It was made the duty of each board of county commissioners to serve as a board for all matters involving public assistance to their respective counties, and, as such, to constitute the single administrative agency in each county through which all the categories of public assistance should be administered, and to act in such capacity as agents of the state department of social security, subject to such regulations and restrictions as were imposed by the act. The board of county commissioners was, in turn, directed to employ an officer who was to have the title of "administrator," and who should be the chief executive officer for the administration of public assistance in such county; but no person was to be eligible for such appointment until he had presented a certificate of eligibility from the state department. The administrator was made responsible to the board of county commissioners for the proper administration of all public assistance affairs placed in his hands, and was to hold office at the pleasure of the board. The administrator was authorized and directed to employ such assistants as were necessary to make adequate investigations, and conduct all other activities incident to his office.

■ We have gone into these legislative details because, in our opinion, they furnish and prompt the answer to the question now before us. In fact, the answer has already been partly supplied, and wholly foreshadowed, by the recent case of *State ex rel. Price v. Peterson,* 198 Wash. 490, 88 P. (2d) 842. In that case, it was held that a board of county commissioners, as agent of the state director, and the county administrator, as agent of the commissioners, were state officers when functioning pursuant to the terms of the social security act. It is true that, in that case, the decision proved a shield for the state, while here it assumes the figure of a sword. However, the result in the *Price* case was the direct consequence of the court's positive conclusion that the board of county commissioners and the administrator, when engaged in administering the terms of the act, were state officers. To hold now that these same personalities are but county officers, would not only contradict the former decision, but would also subvert the expressed purpose of the act to establish and maintain a single agency for the state-wide administration and supervision of public assistance.

By whatever name or term the county organization may have been designated on or after April 1, 1937, it was, with respect to the administration of public assistance, but a geographical subdivision of the state department of social security. *McDaniel v. Moore,* 196 Ark. 201, 118 S. W. (2d) 272.

Now, if the board of county commissioners and the county administrator, when administering the social security act, are state officers, then it must logically follow that the assistants appointed by them to administer the act are, when so functioning, likewise state employees. They are, like their superiors, agents of the state.

The fact that the administrator is appointed by, is responsible to, and holds office during the pleasure of, the board, and the fact that the respondents here may have been appointed by the administrator, are immaterial, because in the final analysis the state department has the power to say who shall be appointed. *State ex rel. Price v. Peterson,* 198 Wash. 490, 88 P. (2d) 842.

Another reason that may be assigned for our conclusion that respondents were not county officers, is that their functions did not relate to purely local county concerns, but rather to the concern of the state at large or the general public, though exercised within definite territorial limits. *State ex rel. Lopas v. Shagren,* 91 Wash. 48, 157 Pac. 31.

We hold, upon appellant's first contention, that respondents were state officers within the purview of the social security act.

Appellant's second contention is that respondents were nonexecutive employees, requiring no certification by a state agency, and hence must be regarded as county employees.

In view of what we have hereinabove stated, this contention would appear to be beside the point. If respondents were in fact, as we hold, state employees, it would make no difference whether they held executive or nonexecutive positions.

However, according to the record, Maskule qualified for the position of senior clerk; Crippen qualified for the position of visitor. Both of those positions are designated, in the rules promulgated by the state director, as executive positions.

The judgment is affirmed.

BLAKE, C. J., BEALS, GERAGHTY, and JEFFERS, JJ., concur.