GAVIN L. HJERLEID, Appellee, v. STATE OF IOWA et al., Appellees.; WINNESHIEK COUNTY et al., Appellants.

No. 45365.

DECEMBER 10, 1940.

Hallagan, Fountain, Steward & Cless, for appellants.

John M. Rankin, Attorney General, and Don Hise, Special Assistant Attorney General, for appellees State of Iowa and State Board of Social Welfare of the State of Iowa.

Miller, Huebner & Miller and Charles W. Joiner, amici curiae.

HALE, J.—The claimant was injured September 17, 1938, such injury arising out of and in the course of his employment. The holding of the deputy industrial commissioner was that claimant was in the employ of the State of Iowa, and his award was against the State. On review the industrial commissioner reversed the finding made by the deputy industrial commissioner and held that the claimant was an employee of Winneshiek County. On appeal to the district court the decision of the industrial commissioner was affirmed and Winneshiek County was held to be the employer. There is no dispute as to the amount of recovery or as to the kind of employment, but the sole controversy is as to whether claimant was an employee of the State of Iowa and its State Board of Social Welfare or of Winneshiek

County. The question, therefore, involves the examination and interpretation of the various statutes relating to the position held by the claimant at the time of his injury.

Claimant's duties at the time of his injury were in connection with the administration of the law on old-age assistance, aid to the blind, aid to dependent children, and emergency relief. He was what is known as a director-investigator. As such director he was employed under the provisions of section 13, chapter 151, Laws of the Forty-seventh General Assembly, which is the same as section 3661.013 of the Code of 1939; and as investigator, under the provisions of what is now known as section 3828.006, Code of 1939. At the time of claimant's injury the provisions of the Code of 1935 and amendments and additions to the Code made by the Laws of the Forty-seventh General Assembly were in force, but since, so far as this action is concerned, there were no changes made by the Code of 1939, reference hereafter will for convenience be made to such Code.

That the State might secure the benefit of financial assistance from the federal government, the social security act was enacted by the Forty-seventh General Assembly for the purpose of conforming to the federal act, and such Iowa Social Welfare Act went into effect in May 1937. That portion of the federal act having application to the question at issue, commonly known as the Social Security Act, and which went into effect August 14, 1935 (42 U. S. C. A., section 301 et seq.), provided for the appropriation to the various states which had submitted and had had approved by the federal social security board plans for old-age assistance. The federal act (in section 302, 42 U. S. C. A.) prescribed the conditions with which the state plan for old-age assistance must comply, among which are: First, that the state plan shall provide that it shall be in effect in all political subdivisions of the state, and, if administered by them, be mandatory upon them; second, provide for financial participation by the state; and, third, either provide for the establishment or designation of a single state agency to administer the plan, or provide for the establishment or designation of a single state agency to supervise the administration of the plan. Other conditions were pro-

vided, but, so far as the question before us is concerned, the foregoing were those to which the state law must conform.

Following the enactment of the federal law, the legislature adopted the state social security act known as chapter 151 of the Laws of the Forty-seventh General Assembly, which created a state department of social welfare "which shall consist of a state board of social welfare, and such other officers and employees as may be hereafter provided." As now constituted the state board consists of three members.

Section 6 of chapter 151, Acts of the Forty-seventh General Assembly, now known as section 3661.007, Code of 1939, is as follows:

"The state board shall be vested with the authority to administer old-age assistance, aid to the blind, aid to dependent children, child welfare, and emergency relief, and any other form of public welfare assistance that may hereafter be placed under its administration. It shall perform such duties, formulate and make such rules and regulations as may be necessary; shall outline such policies, dictate such procedure and delegate such powers as may be necessary for competent and efficient administration. It shall have power to abolish, alter, consolidate or establish divisions and may abolish or change offices created in connection therewith. It may employ necessary personnel and fix their compensation. It may allocate or reallocate functions and duties among any divisions now existing or hereafter established by the state board. It may promulgate rules and regulations relating to the employment of investigators and the allocation of their functions and duties among the various divisions as competent and efficient administration may require.

"The state board shall:

"1. Within ninety days after the close of each fiscal year, prepare and print for said year a report to the governor which shall include a full account of the operation of the acts under its control, adequate and complete statistical reports by counties and for the state as a whole concerning all payments made under its administration, and such other information as it may deem advisable, or which may be requested by the governor or by the general assembly.

"2. Cooperate with the federal social security board created by title VII of the social security act, public No. 271, enacted by the 74th congress of the United States and approved August 14, 1935, or other agency of the federal government for public welfare assistance, in such reasonable manner as may be necessary to qualify for federal aid, including the making of such reports in such form and containing such information as the federal social security board, from time to time, may require, and to comply with such regulations as such federal social security board, from time to time, may find necessary to assure the correctness and verification of such reports.

"3. Exercise general supervision over the county boards of social welfare and their employees.

"4. Furnish information to acquaint the public generally with the operation of the acts under the jurisdiction of the state board."

Section 8 of the act, now known as section 3661.009, Code of 1939, is as follows:

"All employees of the state board shall have been residents of the state of Iowa for at least two years immediately preceding their employment and shall be selected from among those who have successfully qualified in an examination given by the state board or under its direction, covering character, general training, and experience. Such examinations shall be open to all persons, and persons taking such examinations, upon successfully qualifying, shall be classified according to the fields of work for which said persons are fitted, all in accordance with rules and regulations of the state board adopted and published by the state board."

Section 10 of the act, now known as section 3661.010, Code of 1939, is as follows:

"The board of supervisors of each county shall appoint a county board of social welfare, which shall consist of three members in counties of less than thirty-three thousand population, not more than two of whom shall belong to the same political party, and at least one of whom shall be a woman; and which shall consist of five members in counties of more

than thirty-three thousand population, not more than three of whom shall belong to the same political party, and at least one of whom shall be a woman. At the discretion of the board of supervisors one or more of said members may be chosen from the membership of said board of supervisors. Within thirty days after the effective date of this chapter [effective May 28, 1937] the board of supervisors shall appoint the members of the county board, which members shall serve until their successors are appointed as hereinafter provided. Commencing with the year 1938, and annually thereafter, the board of supervisors shall appoint the members of the county board who shall serve for one year and until their successors are appointed. If a vacancy shall occur in the membership of the county board, other than by the expiration of a term, a member shall be appointed to fill such vacancy for the unexpired term. All appointments, made as herein provided, shall be made a part of the regular proceedings of the board of supervisors and shall be filed with the county auditor and with the secretary of the state board.''

Section 11 of the act, now known as section 3661.011, Code of 1939, is as follows:

''All members of the county board shall be reimbursed for the actual and necessary expenses incurred by them in the discharge of their duties. They shall also receive compensation for services at the rate of three dollars per diem, but such compensation shall not exceed a total of ninety dollars in any one year in counties of less than thirty-three thousand population, or one hundred twenty dollars in counties of more than thirty-three thousand population. The expenses and compensation of county board members shall be paid from the general fund of the county; provided, however, that members of the board of supervisors serving on said county board of social welfare shall not be paid compensation as members of said county board of social welfare for any day on which they are paid for their official work as members of the board of supervisors.''

Section 12 of the act, now known as section 3661.012, Code of 1939, is as follows:

"The county board shall be vested with the authority to direct in the county old-age assistance, aid to the blind, aid to dependent children and emergency relief with only such powers and duties as are prescribed in the laws relating thereto."

Section 13 of the act, now known as section 3661.013, Code of 1939, is as follows:

"The county board shall employ a county director and such other personnel as is necessary for the performance of its duties. The number of employees shall be subject to the approval of the state board. The county director and all employees shall be selected solely on the basis of the fitness for the work to be performed, with due regard to experience and training, but graduation from college shall not be made a prerequisite of any such appointment. It shall be a prerequisite to obtaining an appointment that the applicant shall have been a legal resident of Iowa for at least two years prior to the time of making said application.

"Any appointment made by the county board, other than clerical or stenographic help, shall be subject to review by the state board in this respect, that if any appointee is not properly carrying out the duties for which he is appointed, or if any appointee is not qualified or capable of handling the duties for which he is appointed, and the state board so finds, it shall certify a copy of such finding to the county board and the county board shall then discharge the said employee and shall fill the vacancy."

Section 14 of the act, now known as section 3661.014, Code of 1939, is as follows:

"The compensation of county board employees shall be fixed by the county board of social welfare and shall be paid by the state board from funds made available for that purpose. However, the compensation of all employees shall be subject to the approval of the state board and the county board of supervisors."

Prior to the employment of the claimant the State Board of Social Welfare had made a regulation requiring all employees of the County Board of Social Welfare, except clerical and stenographic help, to take an examination given by the state board, and that from those who passed the examination employees should be selected from a list of applicants certified by the state board. This was done under the provisions of section 3661.013 of the Code. The claimant having made application and successfully passed the required examination was certified as eligible and was then appointed by the county board. In his application to the State Board, made on November 13, 1937, in which he applied for the position of director-investigator, claimant states, among other things:

''If employed, I agree to faithfully study, obey and abide by all rules, regulations and instructions of the State Board of Social Welfare and the Divisions under its jurisdiction; * * *.

''I understand that all payments of salary or wages will be made on the pay days established by the State Board, that my employment will not be for any definite period, and that payment for my services will cease when my employment ceases.''

Thereafter the State Board of Social Welfare approved the appointment of the claimant at a salary of $75 per month, with a $31 per month expense allowance, and the claimant was placed upon the state payroll and continued as director-investigator until the time of his accident on September 17, 1938. In the performance of his duties, claimant would make an investigation, which, after it was completed, would be approved by the county board. After that, report was sent to the State Board of Social Welfare for its approval. If the investigation was not completed, the County Board would not tell the claimant to go out and make further investigation. Occasionally orders or information were given the investigator, and after making investigation claimant would make his report on forms provided by the State. Such reports were turned in to the County Board, and they would make their recommendations, and claimant would then send such reports on to the state board. If the State Board desired further information it would write a letter to the claimant requesting it, and further investigation would then be made

and report sent to the board. In questions involving real estate, claimant would fill out a form as requested by the state board, and such report would be sent to the State Board but not submitted to the County Board, but claimant consulted with the County Board as to the estimate of values of real estate when such real estate was to be sold. The claimant also made out daily reports which were sent to the State Board and not submitted to the County Board. Claimant states that he met twice a month with the County Board, but his files were kept under lock and key, and such County Board members did not have access to them.

▮ The evidence in relation to the facts in this case being not in conflict, and the question being entirely a question of law, the ruling of the industrial commissioner may be reviewed in this appeal, and the decision of the commissioner is not conclusive. The question presented is purely a legal one. McKinley v. Clarke County, 228 Iowa 1185, 293 N. W. 449.

▮ The only question for our determination is whether claimant was an employee of the county or of the State. At the outset it may be observed that the mere designation of claimant's office does not determine his status, and that the designation of the district through which the powers and duties were to be exercised does not necessarily make him a county employee. 20 C. J. S. 888, section 100; McDaniel v. Moore, 196 Ark. 201, 118 S. W. 2d 272; Dixon v. People, 53 Colo. 527, 530, 127 P. 930, 932; Ledwith v. Rosalsky, 244 N. Y. 406, 409, 155 N. E. 688, 689.

▮ It is the contention of the appellant that the principal criteria for determining whether the relationship of employer and employee exists are: (1) the right of selection, or to employ at will; (2) responsibility for the payment of wages by the employer; (3) the right to discharge or terminate the relationship; (4) the right to control the work; and (5) is the party sought to be held as the employer the responsible authority in charge of the work or for whose benefit the work is performed. Appellees contend that the four facts to be considered are the first four enumerated above, in order to determine whether the relationship of employer and employee exists. But we are of the opinion that all these matters should be considered. A general rule is laid down in 39 C. J. 35, section 4:

"The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done. Inasmuch as the right to control involves the power to discharge, the existence of the power to discharge is essential, and is an indicium of the relationship."

In determining the question it is necessary to review the statutory provisions. Claimant cites section 3828.001, Code, 1939, which in part reads as follows: "6. The term 'investigator' shall mean the employee of the county board of social welfare assigned to perform the duties specified under the provisions of this chapter." But, as stated in McKinley v. Clarke County, supra, 228 Iowa 1185, at page 1189, 293 N. W. 449, at page 451: "The question is not primarily one of language but rather of statutory powers and duties." The subsection quoted is simply in the list of definitions found in that section (3828.001). By Code section 3661.007 the State Board is vested with authority "to administer old-age assistance, aid to the blind, aid to dependent children, child welfare, and emergency relief, and any other form of public welfare assistance that may hereafter be placed under its administration." But as will be noted by an examination of the statute, there was no authority given the County Board to employ absolutely or to make selection at will. This is indicated by the following provisions in relation to the employment of persons whose duty it is to carry out the provisions of the statutes in relation to social welfare. The number of employees was subject to the approval of the State Board (Code section 3661.013) and subject to review by such board (section 3661.013); the amount of the employees' compensation was subject to approval by the State Board (section 3661.014). Such provisions of the statute show that the County Board was not given full right of selection, but was subject to the general supervision and control of the State Board. We are inclined to the view that the authority of the State Board was not supervisory merely, but executive in its character, and an examination of the statutes so indicates.

The three clauses of the federal enactment in relation to the state plan which must be approved are quoted above. The federal requirement was that there be authorized a single state agency to administer the plan, or a single state agency to supervise the administration of the plan. The intent of congress and of the legislature was that, instead of administering relief locally as theretofore, there should be a single state agency for the administration of the plan for relief; and there can be no dispute that chapter 151 of the Acts of the Forty-seventh General Assembly was enacted for the purpose of obtaining the federal grant and was intended to conform to the general intent of the congress to make the administration of the various kinds of relief through a single state unit. Such is the wording of section 6 of the original act [chapter 151, Laws of the Forty-seventh General Assembly], now section 3661.007, Code of 1939. Paragraph 1 of this section is as nearly complete a designation of the power and authority vested in the state board as could be made. The board may not only outline the policies and dictate the procedure, but it may also delegate such powers as may be necessary for competent and efficient administration. We see nothing in the language of the section quoted which would indicate that the State Board is in any way merely a supervisory board. With power vested in such board, it is reasonable to think that it is in control of the administration of the various forms of relief. That it was the intent of the legislature to take away the powers previously granted to the County Board and vest them in the State Board is shown further by various changes made by amendment to the law as it formerly appeared in the 1935 Code. They may be briefly mentioned. Section 5296-f4 of the 1935 Code granted to the commission authority to make such rules and regulations as were necessary to carry out the provisions of the chapter (266-F1) relating to old-age assistance. Section 5296-f7 gave the power of investigation to the local investigators. But on the repeal of these provisions and the enactment of section 5, chapter 137, Acts of the Forty-seventh General Assembly, it was required that the investigations should be made such as were necessary to furnish the information required by the County Board and the division— that is, the State Board—and in such manner as may be pre-

scribed in the rules and regulations of the State Board relating thereto. Other powers were taken from the County Board and granted to the State Board by amendment, under sections 5296-f12, 5296-f16, 5296-f23, and 5296-f28, Code, 1935. Considering, therefore, the limitation of the powers of the County Board by subsequent amendment and the transfer of these powers to the State Board, it is clear that the use of the word ''employee'' in one section of the act, when limited and defined by subsequent provisions, did not, merely by such designation, make the investigator a county employee.

As to the right to employ, the county is limited by the approval of the State Board and has no independent authority. It can engage no more employees than the State Board permits, and its employees are subject to review by the State Board. So far as employment is concerned, the intent of the statute appears to be that the county, while it may formally name the employee, yet it does so for the State Board and as the agent of such board. The right often delegated to some official of a company to hire workmen as they may be needed cannot constitute such workmen the employees of the official, but of the company itself. That such appointment by the County Board is made only as the agent or representative of the State Board is borne out by the second paragraph of section 3661.013, Code of 1939, which limits the power of the county and makes it subject to review by the State Board, which may remove such appointee if he does not properly carry out the duties for which he was appointed, or if he is not qualified or capable of handling such duties. Under such statute, the County Board has not an independent right of appointment, but the appointees, named by the County Board as a matter of convenience, may be only such as are authorized by the State Board, and subject to its right to pass upon the qualifications of any appointee. In other words, through the agency of the county officials the appointment is made, but it is controlled by the other provisions of the act.

As to the right to discharge, which is an element of the relationship of employer and employee, there is little doubt. The provisions of Code section 3661.013 above referred to are definite in that respect. Not only is the right to review of the appointment given, but, if the appointee is not properly carrying out

the duties for which he has been appointed or is not qualified or capable of handling the duties, and the State Board so finds, it shall certify a copy of such finding to the County Board, and the County Board shall then discharge the employee and shall fill the vacancy. Here the determination as to the qualifications or diligence of the employee is plainly granted to the State Board. There is no discretion given to the County Board, no right to refuse to carry out the mandate, but merely the formal act of discharging. No one can say that the County Board, under such circumstances, has any authority in relation to the discharge, but only the duty of acting in compliance with the order of the State Board. Appellees suggest that, if the County Board refused to act in accordance with such directions, the only remedy the State Board would have would be through an action in mandamus. It is not to be presumed that any officer will act in direct disregard of the provisions of the law, but, if he should refuse to act, his action could be compelled. The right to discharge is vested in the State Board.

It is not disputed by appellees that under the terms of the statute the compensation of the employee is paid by the State. While it is fixed by the County Board of Social Welfare, it cannot be so fixed except with the approval of the State Board and the County Board of Supervisors; and the actual payment is made by the State. This is not a mere right of review, but there is vested in the State Board the right to regulate the payment, and the payment is by the State.

In relation to the right to control the work we also think that the statute is definite. Section 6, chapter 151, Acts of the Forty-seventh General Assembly (section 3661.007, Code of 1939), heretofore quoted, indicates the extent of the powers of the State Board. It performs duties, formulates and makes policies, dictates procedure, and delegates such powers as may be necessary to carry out the provisions and purposes of certain statute provisions. If a board may formulate and make rules, it is hardly possible that further authority is necessary to establish its control over the work. What the board does must necessarily be done through its agents. But we cannot agree that the above provisions merely give to the State Board a veto power. The practical administration of the social welfare act

is placed in the hands of the State Board. It is naturally given large discretionary powers. It is within its power and authority to see that its orders and rules are carried out. While under Code section 3661.007 it may exercise general supervision over county boards of social welfare and their employees, such supervision is given for the purpose of carrying out its own orders, and, being given the right of discharge, it has the power to enforce such orders. The detail work must necessarily be entrusted to subordinates. The County Board would find itself lost in any attempt to carry out the welfare act independently of or in conflict with the State Board. The very fact that the County Board could not act alone is indicative of the fact that it is acting under the direction and control of the State Board.

Closely allied to the question of the right to control is the responsibility for the administration of the act. The claimant insists that the State Board is merely a supervisory agent; but, as indicated heretofore, if this were true, then the County Board would have the duty of formulating and carrying on the welfare policies, but, as shown by the sections heretofore quoted, it has little to do other than to make recommendations. That the intent of the legislature was that the act should be administered by the State Board is indicated by its own expressions as to the general purposes sought to be accomplished, and as shown in the title of the act. Part of the title of chapter 151, Acts of the Forty-seventh General Assembly, is: "* * * to create divisions within the state department to administer old age assistance, emergency relief, aid to the blind, aid to dependent children, and child welfare." And again, chapter 137, Acts of the Forty-seventh General Assembly: "AN ACT to amend and revise chapter two hundred sixty-six-F1 (266-F1) of the 1935 code of Iowa * * *; creating a division of old age assistance under the administrative jurisdiction of the state department of social welfare; * * *." In Code section 3661.007 it is declared: "The State Board shall be vested with the authority to administer old-age assistance, aid to the blind, aid to dependent children, child welfare, and emergency relief, and any other form of public welfare assistance that may hereafter be placed under its administration." In the chapter on emer-

gency relief, and in Code section 3828.067, the legislature provided that the State Board should be charged with the supervision and administration of emergency relief funds. In the chapter on child welfare, and in Code section 3661.017, the legislature provided that the State Board should administer and enforce the provisions of that chapter. In the chapter relating to aid to the blind, and in Code section 3684.04, the legislature provided that the State Board should be the responsible authority for the administration of that chapter. In the chapter on old-age assistance, and in Code section 3828.003, the legislature provided that the State Board should be the responsible authority for the administration of that chapter. In addition to these expressions of the legislative intent, the various enactments throughout indicate that the State Board is the responsible authority for the administration and that in the administering of the welfare acts the county acts as agent of the state department. It is unnecessary to review all of these provisions, some of which have been pointed out before.

Our conclusion must be that the actual authority is vested in the State Board, and that it must necessarily act through the various agencies enumerated in the statutes.

That the right to exercise control is an important test of the relationship of employer and employee has been held by this court at various times.

In Lembke v. Fritz, 223 Iowa 261, 266, 272 N. W. 300, 303, it is said:

"All the cases agree that the test of the relationship of master and servant is not the actual exercise of power of control over the details and methods to be followed in the performance of the work but the test is the right to exercise such control." And see cases cited.

From a reading of the statutes it is our opinion that the State Board has the authority to tell how the work of the employee shall be done.

While the social welfare statutes, both national and state, are of comparatively recent origin, the relief of the destitute and defective before the enactment of such statutes having generally been left to local supervision and control, yet the in-

terpretation of these statutes with reference to the matters herein involved has been passed upon by some of the courts of the country. The question involved here has been examined and passed upon by the supreme courts of Arkansas and Washington.

In Maskule v. State, 3 Wash. 2d 121, 99 P. 2d 929, the question arose as to whether certain employees were state or county officers. The State's contention, however, was that they were county officers. If state officers they were entitled to a minimum salary, so that the question we have here to resolve was determined in that action. The general scope of the Washington act, and, in general, the details, were very similar to the provisions of the Iowa act. The department of social security, by the legislature, was empowered to serve as a single state agency in the administration of all public assistance programs originating under the jurisdiction of the federal government, to exercise such supervision and promulgate such rules and regulations as should be necessary in order to assure full compliance with the terms of the federal grants, to fix state-wide uniform standards for all public assistance, and to effect uniform observance of such standards. As in Iowa, there was a co-ordination between the state and local bodies. The board of county commissioners was directed to employ an officer, who should have the title of ''administrator,'' and who should be the chief executive officer for the administration of public assistance in such county, and there must be, as in Iowa, a certificate of eligibility from the state department for his appointment. We do not go into all the details of the act, but sufficient has been shown to indicate its similarity to our own law. The court held in Maskule v. State, 3 Wash. 2d 121, at page 126, 99 P. 2d 929, at page 931, that:

''By whatever name or term the county organization may have been designated * * * it was, with respect to the administration of public assistance, but a geographical subdivision of the state department of social security.''

And consequently, the court held that, since these officers' functions did not relate to purely local county concerns, but rather to the concerns of the state at large, or the general pub-

lic, to be exercised within definite territorial limits, they were state officers; and the court held that these employees, even if appointed by the county commissioners, were, like their superiors, agents of the state.

In State ex rel. Price v. Peterson, 198 Wash. 490, 88 P. 2d 842, a mandamus proceeding to compel the county commissioners under the Washington social security act to make public their books and records, it was held that the commissioners were state officers.

The question has also arisen in Arkansas, where, in the case of McDaniel v. Moore, 196 Ark. 201, 118 S. W. 2d 272, an action arising under the welfare legislation of that state, the holding was that county welfare boards and county directors of welfare, performing, as they do, functions of concern to the general public, within strict territorial limits, were not county officers but state officers; and the court held that, being such, an appointment to the office of county director of public welfare, without reference to the eligibility list of the state civil service commission, was unauthorized. The opinion quotes the act of 1937 creating the public welfare department, which act, as was ours, was passed for the purpose of complying with the provisions of the federal social security act (42 U. S. C. A., section 301 et seq.) and so that the state might participate in the benefits of that act. The court concludes that the trial court was correct in holding that the county departments of public welfare are mere geographical subdivisions of the state department of social security, and that county departments are mere agencies of the state department. The provisions of the Arkansas statute are very similar to those of this state, but on the general proposition that the functions are not of local concern but concern the state at large, the court held that employees are of the state and not of the county.

It will be noticed that, while the Washington act grants to the department of social security the authority to supervise the administration of public assistance, and the Arkansas statute gives authority to the state department to administer and supervise, the Iowa board acts entirely as an administrator and no supervisory capacity is mentioned in the act creating such board. See section 3661.007, Code, 1939.

From our examination of the statutes and the authorities cited, it is our holding that it was the intent of the legislature to create a single state agency to administer the provisions for the forms of relief mentioned, with the right to create agencies for the purpose of such administration, and that such director-investigators are engaged in such administration under the authority and discretion of the State Board; that the payments administered by such agencies are made only on approval of the State Board; that the director-investigator's appointment is subject to the approval of the State Board; and he is subject to discharge at the direction of such board, and is controlled and his duties are regulated by the State Board.

From all the foregoing, our conclusion must be that the claimant herein was an employee of the State and not of the County. The finding, order, and decree of the district court must, therefore, be reversed, and the cause remanded for judgment in conformity with this opinion.—Reversed and remanded.

RICHARDS, C. J., and STIGER, HAMILTON, SAGER, BLISS, OLIVER, and MILLER, JJ., concur.