MUSCATINE CITY WATER WORKS et al., Appellants, v.
BLANCHE E. DUGE et al., Appellees.

No. 46081.

DECEMBER 15, 1942.

Miller, Huebner & Miller, of Des Moines, for appellants.

Matthew Westrate, of Muscatine, for Muscatine Municipal Electric Plant and Board of Water and Light Trustees of the City of Muscatine, appellees.

Robert K. Stohr, of Muscatine, for City of Muscatine, appellee.

Harold E. Wilson, of Muscatine, for Blanche L. Duge, appellee.

HALE, J.— Proceeding under the workmen's-compensation law [Code, 1939, section 1361 et seq.] by the Muscatine City Water Works and Employers Mutual Casualty Company, its insurer, to determine liability for compensation payments arising out of the death of Leonard E. Duge, alleged to have been an employee of the waterworks but claimed by appellants to have been an employee of the Muscatine Municipal Electric Plant at the time of his death and not within the coverage of the policy of the casualty company issued to the waterworks. Neither party disputes the right of Blanche E. Duge, widow of said Leonard E. Duge, to compensation for the death of her husband, all parties conceding that the death arose out of and in the course of his employment within the provisions of the workmen's-compensation law and there being no question as to the amount of such compensation.

The Muscatine Municipal Electric Plant denied that Leonard E. Duge was an employee of the electric plant at the time of his death and alleged that he was an employee of the waterworks at such time. The deputy industrial commissioner, as sole arbitrator, held that Leonard E. Duge's fatal injury arose out of and in the course of his employment by the City of Muscatine, which

had been made a party by the commissioner. The holding of the deputy commissioner also was that at the time of his death Duge was an employee of the waterworks and of the City of Muscatine, and that the City of Muscatine, the waterworks, and Employers Mutual Casualty Company, as insurance carrier, should pay compensation to the surviving spouse. On review the industrial commissioner awarded compensation against the City of Muscatine, the board of trustees, who had intervened before the review hearing, and the Employers Mutual Casualty Company. On appeal to the district court the award of the industrial commissioner was affirmed.

The case was tried largely on the stipulation of facts between the parties. The appellants in their brief set out a statement of facts, which in part is conceded to be substantially correct by the appellees.

Leonard E. Duge was killed while operating a cement mixer in the course of his employment with some employer. There is no question but that some entity is liable to pay compensation to his surviving spouse. The only question is, Which one? The Employers Mutual Casualty Company and its assured, Muscatine City Water Works, brought this action under section 1437, Code of 1939, asking for a board of arbitration. Prior to the hearing the industrial commissioner made the City of Muscatine a party. It denied being the employer. The co-ordinated board of trustees, as provided in chapter 329.1, Code of 1939, intervened before the review hearing and became a party. From this relatively simple beginning the case has become more complex in form, all of the parties still admitting that someone is liable to pay Mrs. Duge compensation but denying that they themselves have that duty.

The City of Muscatine is a special-charter city. In 1900 it purchased from a private concern the Muscatine City Water Works and has operated it since that time. In 1922 the Muscatine Municipal Electric Plant was approved by the city and service was begun in 1924. Prior to 1929 the electric plant and the waterworks were each operated under a separate board of trustees, each having three members. From March 31, 1929, through and including the time of the fatal injury in question

the management and control of the Muscatine City Water Works and the Muscatine Municipal Electric Plant have been in a co-ordinated board of trustees as provided by chapter 329.1, Code of 1939. Since both the waterworks and electric plant are municipally owned the final ownership of both utilities is in the City of Muscatine. The actual control is vested in the co-ordinated board of trustees, consisting of five members, and the management of the utilities was entrusted to Wilbur R. Thorson, general manager of both the electric plant and the waterworks. Walter Molis was the superintendent of distribution of the waterworks and Charles Erdman was the superintendent of distribution for the electric plant. The two organizations are entirely separate and distinct in their character, each keeping a separate set of books, each operating as a separate entity, the funds of each plant being kept apart and deposited in separate accounts, the employees of each being under separate management, and each plant maintaining a separate pay roll.

The waterworks had no bonded indebtedness at the time of the fatal injury. The light plant had a bonded indebtedness of between $76,000 and $91,000. The assets of the waterworks were approximately $500,000. The assets of the electric plant were approximately $1,400,000.

The Muscatine Municipal Electric Plant carried a workmen's-compensation reserve fund from which they paid all workmen's-compensation claims made against it.

The members of the co-ordinated board of trustees were paid $25 per month by the electric plant and $25 per month by the waterworks. The salaries of the meter readers and the help in the administration plant were all paid by the electric plant, but some amounts so paid were reimbursed to the electric plant by the waterworks for its share of administration expense, the division of expense being based on the ratio of the number of waterworks customers as compared to the number of electric-plant customers.

On March 9, 1939, the Muscatine City Water Works requested the Employers Mutual Casualty Company to issue to it a workmen's-compensation policy, and filed with said insurance company its declarations. On April 1, 1939, in response to said request and based on said declarations, the Employers

1080

Mutual Casualty Company issued its standard workmen's-compensation policy to the Muscatine City Water Works as employer covering waterworks operations. The casualty company did not issue a policy to the City of Muscatine, to the Muscatine Municipal Electric Plant, or to the Board of Water and Light Trustees.

In 1936 Duge was employed by the electric plant and learned how to operate the cement mixer which was owned by said plant, the same mixer he was operating at the time he was killed. He worked for said plant only until the fall of that year. In 1939, Walter Molis, as superintendent of distribution of the waterworks, employed Duge for the waterworks and he worked for Molis and the waterworks until October 17, 1939.

Leonard E. Duge, the decedent, on the 6th of June 1939, was employed by Molis, the superintendent of the waterworks distribution, as an employee of the works. He was assigned to the duty of operating a cement mixer and performing other work for the waterworks. On October 17, 1939, by order of Mr. Molis, he went to the electric plant and thereafter, until his death on November 6, 1939, Duge, with the exception of four hours on November 3, 1939, operated the cement mixer in the construction of a storage warehouse situated at the rear of the electric powerhouse substation in Muscatine. During the four hours on November 3, 1939, he was directed by Mr. Molis to work, and did work, on the new suction line at the plant of the waterworks, and when that was completed, Molis, who at the time had such authority, directed him to go back to work at the storage warehouse. Mr. Erdman was at the time manager of the electric-light plant. From June 6, 1939, up to and including November 6, 1939, Duge was carried on the pay roll of the waterworks as one of its employees and received the warrants of the waterworks in payment of his wages. For the time he worked on the storage warehouse he was paid by the waterworks, but such amount so paid was reimbursed to the waterworks by the electric plant.

One Wilkinson, an employee of the waterworks, was also sent down to superintend and direct the building of the warehouse. The waterworks was later reimbursed by the electric plant for Wilkinson's services. This warehouse was built on

land owned by the electric plant, of materials paid for by the electric plant, and part of the laborers thereon were paid by the electric plant. The cement mixer which Duge operated was the property of the electric plant. There was testimony that it was intended that the building should be used by both the waterworks and the electric plant for storage, but was so used for storage by the waterworks for only a short time.

In August 1940, the pay roll of the waterworks was audited by an auditor apparently acting for the Employers Mutual Casualty Company. His report showed a total of $13,609.80, including the total amount of wages paid to Duge, as shown by the pay roll sheets, and after such an audit a statement of the premium due the Casualty Company based upon said audit was received by the waterworks and checked against the pay roll by a waterworks employee, H. S. Mueller, an auditor, who found it corresponded with the total of the pay roll of outside labor, including the wages paid to Duge.

It is the contention of appellants that at the time of the injury Duge was working for the electric plant, or the Board of Water and Light Trustees in its capacity as trustee for the electric plant, and that his widow should therefore be paid from the workmen's-compensation reserve fund of the electric plant. Appellee electric plant contends that Duge was an employee of the waterworks, or the Board of Water and Light Trustees in its capacity as trustee for the waterworks, and that the Employers Mutual Casualty Company, who issued a workmen's-compensation policy covering waterworks operations, should pay the compensation claim.

Appellants claim that the court erred in affirming the industrial commissioner's decision and award made April 21, 1941. In support of their claim appellants set out various propositions, several of which are immaterial and others about which there can be no question. The ultimate question in the case, of course, is, Who was the employer of Duge at the time of his death? Appellants' objections are largely directed to the findings of the industrial commissioner. Under our holding it is not of great importance whether the matter is to be determined by us as a matter of law, or whether we accept the decision of

the commissioner as one of fact, by which we would be bound as by a verdict of a jury on contested facts.

Section 1421, Code of 1939, defines "employee" as follows:

" 'Workman' or 'employee' means a person who has entered into the employment of, or works under contract of service, express or implied, or apprenticeship, for an employer, except as hereinafter specified."

This definition, of course, supersedes any other definition, and it will be noticed that to constitute such employee there must be some contract of service. Appellants argue that Duge was transferred by the general manager of the waterworks and electric plant from the waterworks to the electric plant, or, that he was loaned by the waterworks to the electric plant to work on an electric-plant project; and as the electric plant had full charge and control of materials and men for such project, and paid for all materials and men, and reimbursed the waterworks for all wages paid to Duge, an implied contract existed between Duge and the plant or the board of light trustees, making such plant liable under the workmen's-compensation law and relieving the waterworks of liability. We do not believe that the evidence supports this proposition. While working on the warehouse, as we have stated, the building was superintended by and under the direction of Wilkinson, himself an employee of the waterworks and working sometimes at one place and sometimes at the other. To constitute a contract of employment, whether express or implied, it would appear to us that there must be some recognition on the part of the employee, if not formal consent, of or to the new entity or person as the employer for whom the labor is being performed. Jackson v. Cathcart & Maxfield, 201 Minn. 526, 277 N. W. 22. The evidence does not indicate anything of the kind. There was one statement made by Thorson in his testimony that "we transferred Duge for the duration of the job." This apparently cannot mean that he was transferred to the employment of the electric plant and removed from the employment of the waterworks, for the reason that under the undisputed facts Duge was never placed on the pay roll of the electric plant, and it seems evident that after Duge worked on

the mixer on the warehouse site, he was under the control of the superintendent of the waterworks. When needed to do some work on a new suction line belonging to the waterworks system, he was not only directed by Mr. Molis so to do, but upon its completion was directed to go back to the warehouse. There is no evidence that Duge could have been discharged from his employment by the electric-plant superintendent, and this is one of the elements which must exist where there is a relation of employer and employee. See Hjerleid v. State, 229 Iowa 818, 295 N. W. 139. There is no question, of course, that to come within the purview of the workmen's-compensation law the relation of master and servant must exist.

The stipulation states that the wages were paid by the waterworks, that eventually they were reimbursed; but the one to whom the employee looked for payment, and from whom he received payment, was the waterworks. That the waterworks afterward billed the electric plant and received the amount expended for Duge's wages does not alter the situation. The payment was from the waterworks to the employee. This is undisputed and the exhibits introduced show that Duge's name appears on the waterworks time sheets from June 6, 1939, to November 6, 1939, the date of his death. Nothing in the record shows that at any time Duge's name ceased to appear on the pay roll of waterworks employees or did at any time appear as an employee of the electric plant.

It might be claimed that Duge, by working on the warehouse, gave implied consent to a contract of employment with the electric plant, but there is nothing in the record to show that he knew, or had any occasion to know, that his employment was with the electric plant rather than with the waterworks.

Another element to be considered in determining the relationship was the direction of the work. Wilkinson, of the waterworks staff, superintended the erection of the warehouse, as shown by the testimony of Molis, the waterworks superintendent. Duge proceeded to the warehouse work under the order of the superintendent. We do not think that the evidence supports appellants' theory of a "transfer employee." The idea of the transfer of the workman from one employment to the other is

not borne out by the facts, nor that there was a contract, either express or implied, by which he would have reason to regard the electric plant as his employer.

 Appellants argue that this case comes under the rule of the "loaned employee" doctrine. Appellants cite various cases from other jurisdictions, none of which, in the light of our own previous decisions, are applicable. The principles laid down in some of our former decisions control the question here. The case of Knudson v. Jackson, 191 Iowa 947, 183 N. W. 391, involved a question of a claim under the workmen's-compensation act, wherein it was sought to hold the contractor, Knudson, liable as the employer to an alleged employee, Jackson. Knight was a team contractor for whom Jackson worked, receiving $3.50 a day for his services, and Knight contracted his team and labor for $7 per day. Knudson did not select the man or the team for the work. The industrial commissioner held that Knudson was not Jackson's employer. Upon reversal of this holding by the district court, and appeal, this court held with the commissioner and reversed the district court. It was held that under our law the employment or work must be under a contract of service, express or implied (Pace v. Appanoose County, 184 Iowa 498, 168 N. W. 916); that definitions recognized by the common law cannot be invoked where the legislature has, by express enactment, defined the terms of the statute. The case distinguishes between authorities therein cited from other courts and shows the two lines of decisions. The court refused to accept the theory of general and special employer, or, as it is sometimes termed, "loaned employee," holding that there was no contract of service, express or implied, between the claimant Jackson and the so-called special employer, Knudson, but that there was a contract of service between claimant and his general employer, Knight. We think the case applies to the situation in the case at bar. There is no record of any contract of any kind, express or implied, other than between Duge and the waterworks.

Afterward, in Hoover v. Independent Sch. Dist., 220 Iowa 1364, 1367, 264 N. W. 611, 612, this court said:

"This court, however, has adopted a test for determining

whether the relation of employer and employee exists under our statute which would seem to quite effectively exclude the loaned employee as an employee of the person to whom he was loaned. Claimants practically concede that if the rule laid down in Knudson v. Jackson, 191 Iowa 947 [949], 183 N. W. 391, 393, is to be adhered to, they cannot recover. We there said:

" 'In order for a person to come within the terms of this act (Workmen's Compensation) as an employee, therefore, it is essential that there be a "contract of service, express or implied," with the employer whom it is sought to charge with liability.' "

Cases from other jurisdictions are determined on a theory which we have not adopted in this state, that the identity of the employer can be determined either by the kind of work the claimant was doing or whose work he was performing at the time of the injury. The doctrine of the foregoing cases of Knudson v. Jackson and Hoover v. Independent Sch. Dist. does not support any such theory. In this state the question of the employer-employee relationship is determined by the statutory test, With whom did the claimant have a contract of employment, express or implied? Appellants make a distinction between the facts of the cases cited and the case at bar, but we see very little distinction. They argue that in none of these cases was the general employer in the business of selling the services of an employee to a third person. The facts in the Knudson case directly oppose this claim. The services were sold with the use of the team. In the instant case Duge was not only permitted, but directed, by his actual employer to perform the work which he did perform.

Appellants also argue, in apparent contradiction of their theory of the loaned employee, that there is such a thing as "dual employment" and that Duge could have been an employee of both the waterworks and the electric plant. They state that if the waterworks could be construed to be the employer of Duge, such employment was dual, and while working and performing services for the electric plant his injury did not arise out of and in the course of his employment with the waterworks. This apparently is on the theory which we discuss in the

preceding division. We do not consent to the view that the place where the work is performed, or the kind of work, determines the employer—a theory that has been held by some states—nor, as stated in the preceding division, can we agree that the electric plant was an employer of any kind under the provisions of our workmen's-compensation law or under the holdings of our cases. This idea is advanced by the appellants but we think there is nothing in the record to authorize it. While the appellants deny that there was any employer-employee relationship on the part of Duge with the waterworks, they advance the dual relationship only in the event that such would be the holding under the evidence in this case. We cannot agree there was any such dual employment as suggested.

The holding of the commissioner that while the warehouse was on land owned by the electric plant, yet it was a project of the City of Muscatine and could be used for both of its utilities, we believe to be sufficiently established by the evidence to warrant the decision of the commissioner and his holding that the employment came within the coverage of the policy.

Some question is raised as to whether Duge's employment was under the coverage of the policy. Our holding that the employer was the waterworks would dispose of the question, since the policy covered all employees of the waterworks. The commissioner found as a fact that the warehouse was for the use of both plants and that labor performed in connection with the warehouse by employees connected with either utility was for the beneficial interest of the plant to which they were attached, and with this we agree. There was a question as to the testimony of Mr. Roach, one of the trustees, but we see no reason why he could not testify as to the use of the building of his own knowledge. We are satisfied that, considering all the evidence, the operations in which Duge was engaged were incident or appurtenant to or connected to some extent with the waterworks. We should keep in mind also that, while operated as separate entities, the control of the two utilities was in the board of trustees.

Motion to strike appellees' amendment to abstract is overruled.

The conclusion must be that the ruling of the commissioner,

sustained by the district court, was correct, and such finding and ruling of the district court is hereby affirmed.—Affirmed.

WENNERSTRUM, C. J., and SAGER, MITCHELL, OLIVER, GARFIELD, BLISS, and STIGER, JJ., concur.

MILLER, J., takes no part.