SISTER MARY BENEDICT, claimant-appellee, v. ST. MARY's CORPORATION, employer, and UNITED STATES FIDELITY AND GUARANTY COMPANY, insurance carrier, appellants.

No. 51112.

(Reported in 124 N.W.2d 548)

848

November 12, 1963.

John Paul Jones and W. C. Hoffmann, of Des Moines, for appellants.

Roger Harrison and Mote, Wilson & Welp, all of Marshalltown, for appellee.

Moore, J.—On July 30, 1961, Sister Mary Benedict filed her petition for arbitration before the industrial commissioner seeking compensation and payment of medical and hospital expenses in connection with her injury suffered on July 29, 1960, in a convent owned by defendant St. Mary's Corporation, at Marshalltown. After hearing, a deputy commissioner awarded compensation and ordered defendant and its insurer to pay certain medical and hospital expenses. On review the award was affirmed by the commissioner. This decision was affirmed by the district court and judgment entered accordingly. Defendant and its insurer have appealed.

Defendant assigns three errors. The evidence does not warrant or support the commissioner's findings that (1) plaintiff was an employee of St. Mary's Corporation, (2) plaintiff sustained injury arising out of and in the course of her employment and (3) medical and hospital expenses should be paid.

Before referring to the record it seems desirable we call attention to the functions of the industrial commissioner and the court in this and like cases. Section 86.29, Codes, 1958, 1962, in part provides, "In the absence of fraud the findings of fact made by the industrial commissioner within his powers shall be conclusive" on appeal. Section 86.30 insofar as here applicable provides any decision of the commissioner "may be modified, reversed, or set aside on one or more of the following grounds and on no other: * * * 3. If the facts found by the commissioner do not support the order or decree. 4. If there is not sufficient competent evidence * * * to warrant * * * the order or decision." No claim is made here of fraud or that the commissioner acted without or in excess of his powers.

We have repeatedly and consistently construed these provisions as making the commissioner's findings of fact conclusive where the evidence is in dispute or reasonable minds may differ on the inferences fairly to be drawn from the facts. Such findings have the same standing as a jury verdict. Bocian v. Armour & Co., 244 Iowa 304, 56 N.W.2d 900; Hassebroch v. Weaver Construction Co., 246 Iowa 622, 67 N.W.2d 549; Elliott v. Wilkinson, 248 Iowa 667, 81 N.W.2d 925; Lamb v. Standard Oil Co., 250 Iowa 911, 96 N.W.2d 730; Daggett v. Nebraska-

Eastern Exp., Inc., 252 Iowa 341, 107 N.W.2d 102; Ziegler v. United States Gypsum Co., 252 Iowa 613, 106 N.W.2d 591.

It is the court's duty to examine the evidence to determine whether it is sufficient to support the factual conclusion of the commissioner. Bocian v. Armour & Co., Hassebroch v. Weaver Construction Co. and Ziegler v. United States Gypsum Co., all supra.

The evidence submitted at the arbitration hearing and later reviewed by the industrial commissioner and district court is the testimony of Sister Mary Benedict, Sister Mary Joseph, Monsignor Skahill, and a fourth witness who testified regarding value of housing. Several exhibits were also offered. The testimony of the first three varies and conflicts to some extent but creates no serious dispute. Several reasonable inferences may be drawn therefrom.

Plaintiff, Sister Mary Benedict, is a member of the Congregation of the Sisters of Humility of Mary, a Catholic order, whose Mother House is at Ottumwa. Saint Mary's Corporation operates a parochial school in connection with the church at Marshalltown. The school superintendent is Monsignor Skahill. The schoolteachers are Sisters and are secured each year by Monsignor Skahill's request to the Mother Superior of the Order at Ottumwa. From the list of teachers submitted the Monsignor has a right to accept or reject any one or more. If a teacher proved unsatisfactory, the Monsignor could release her at once but would probably take the matter up with the Mother Superior.

During the school year beginning in August 1959 plaintiff was one of the teachers at St. Mary's. The Monsignor assigned Sister Mary Joseph to serve as school principal. Plaintiff taught business subjects and was also secretary-treasurer at St. Mary's High School Convent where living quarters were furnished to all teachers and where they were required to live. Her work as secretary-treasurer was performed at the convent. She testified: "For my services as teacher or secretary-treasurer, I received $750 a year plus a furnished room, private room, furnished, in the convent at 12 West Linn." She also had use of all the facilities of the house.

She could withdraw from her teaching or employment at anytime but testified she would probably first submit her request to the Mother Superior for a dispensation.

The pay for the services of the teachers, including plaintiff, was paid by one monthly check made payable to the order. Plaintiff endorsed each of these checks for the order and deposited them. Nothing was paid directly to her. She did not have a social security number nor file any income tax returns.

During July 1960 plaintiff each day was doing her work as secretary-treasurer at the convent. On July 29 at about 8 a.m. she prepared a little breakfast for herself and two other Sisters. There was no cook present. After breakfast while putting a dish in the cupboard she fell. She suffered a left hip fracture. Surgery, hospitalization and a long period of recuperation followed.

I.   Defendant contends there was no evidence on which the commissioner could properly base his finding that plaintiff was an "employee" within the terms of Code section 85.61(2). It provides:

"2. 'Workman' or 'employee' means a person who has entered into the employment of, or works under contract of service, express or implied, or apprenticeship, for an employer, except as hereinafter specified."

In Knudson v. Jackson, 191 Iowa 947, 949, 183 N.W. 391, 392, we said: "As used in this statute, we do not think there is any legal distinction to be recognized between the phrases in section 2477-m16. A person 'who has entered the employment of an employer' is 'a person who works under contract of service, express or implied, for an employer.'" Section 2477-m16 is now section 85.61(2).

In other words, employment implies the required contract on the part of the employer to hire and on the part of the employee to perform service.

The major elements of the employer-employee relationship for the purposes of workmen's compensation under the Iowa Act are: (1) The employer's right of selection, or to employ at will, (2) responsibility for the payment of wages by the employer, (3) the right to discharge or terminate the relation-

ship, (4) the right to control the work, and (5) is the party sought to be held as employer the responsible authority in charge of the work or for whose benefit the work is performed. Hjerleid v. State, 229 Iowa 818, 826, 827, 295 N.W. 139, 143; Mallinger v. Webster City Oil Co., 211 Iowa 847, 234 N.W. 254; Smith v. Marshall Ice Co., 204 Iowa 1348, 217 N.W. 264; Franks v. Carpenter, 192 Iowa 1398, 186 N.W. 647; Muscatine City Water Works v. Duge, 232 Iowa 1076, 7 N.W.2d 203.

▮▮▮ Applying these tests to the facts of this case, we conclude the finding of the commissioner that plaintiff at the time of her injury was an employee of St. Mary's Corporation is fully sustained by the evidence.

Our holding finds strong support in Sister Odelia v. Church of St. Andrew, 195 Minn. 357, 263 N.W. 111. The facts are on all fours with this case. The Minnesota court at page 358 of 195 Minn., page 112 of 263 N.W., states:

"We think the commission was right in concluding that Sister Odelia was an employe of the church. It is true that she turned over the surplus of her earnings to her own order, but that fact is of no consequence as a defense. She might have assigned all her earnings without effect on her relationship to the church. She is in a position much like that of an unemancipated minor whose parent puts him out for hire and is entitled to his wages. Certainly he and not the parent is the employe."

Defendant argues Blust v. Sisters of Mercy, 256 Mich. 1, 239 N.W. 401, supports its position. We do not agree. A novitiate (a nun under study) was injured while taking her training to teach as a nun. She sought to collect workmen's compensation from the religious order where she was taking her training. The court held the evidence failed to establish an employer-employee relationship as there was no contract for hire. The facts distinguish it from the case at bar.

II. Defendant next contends the evidence fails to establish plaintiff's injury arose out of and in the course of her employment as required by Code section 85.3(1).

Code section 85.61(6) provides:

"The words 'personal injury arising out of and in the course of the employment' shall include injuries to employees whose

services are being performed on, in, or about the premises which are occupied, used, or controlled by the employer, and also injuries to those who are engaged elsewhere in places where their employer's business requires their presence and subjects them to dangers incident to the business."

To be compensable an employee's injury must not only occur "in the course of employment" but also "arise out of it". The burden of proof rests on plaintiff to prove both of these factors.

We have frequently said "in the course of" the employment refers to time, place and circumstances of the injury. "Arising out of" relates to the cause and origin of the injury. Griffith v. Cole Bros., 183 Iowa 415, 426, 165 N.W. 577, 581, L. R. A. 1918F, 923; Christensen v. Hauff Bros., 193 Iowa 1084, 1088, 188 N.W. 851, 853; Walker v. Speeder Mach. Corp., 213 Iowa 1134, 1144, 1145, 240 N.W. 725, 729, 730; Crowe v. DeSoto Consol. Sch. Dist., 246 Iowa 402, 406, 68 N.W.2d 63, 65. These cases cite and review many of our cases which consider the rule and the question of whether an injury arises out of and in the course of employment. We quote from a few which seem directly applicable.

Casey v. Hansen, 238 Iowa 62, 64, 26 N.W.2d 50, 52, states:

"The term 'arising out of' implies some causal relation between the employment and the injury; 'in the course of' means during the period of employment and at a place where the employee may be performing the duties of his employment or doing something incident thereto."

In Bushing v. Iowa Railway & Light Co., 208 Iowa 1010, 1018, 226 N.W. 719, 723, we said:

"An injury occurs in the course of employment when it is within the period of the employment, at a place where the employee reasonably may be in performing his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. * * * An injury in the course of employment embraces all injuries received while employed in furthering the employer's business, and injuries received on the employer's premises, provided that the employee's presence must ordinarily be required at the place of the injury, or, if not so required,

employee's departure from the usual place of employment must not amount to an abandonment of employment, or be an act wholly foreign to his usual work. * * * An employee does not cease to be in the course of his employment merely because he is not actually engaged in doing some specifically prescribed task, if, in the course of his employment, he does some act which he deems necessary for the benefit or interest of his employer."

In Sachleben v. Gjellefald Construction Co., 228 Iowa 152, 290 N.W. 48, compensation was allowed for injuries sustained after the employee left his place of work to answer a call of nature and went over to a point between two lines of railway freight cars to conceal himself from public gaze. At page 154, 228 Iowa, page 49, 290 N.W., we said:

"The rule is that an injury is one arising in the course of the employment which occurs while the employee is doing what a man so employed may reasonably do within the time during which he is employed, and at a place where he may reasonably be during that time."

In Rish v. Iowa Portland Cement Co., 186 Iowa 443, 451, 170 N.W. 532, 535, where an employee was allowed compensation for injuries received when lighting a cigarette, we said:

"The theory upon which compensation has been allowed in cases where the injury occurred while the workman was engaged in protecting himself from cold, or refreshing himself with food or other necessary comforts, is that some indirect benefit at least accrues therefrom to the master."

In Nester v. H. Korn Baking Co., 194 Iowa 1270, 190 N.W. 949, an employee went home to breakfast after making deliveries for his employer. While there, employer's horse became frightened. In an attempt to restrain the animal the employee was fatally injured. We held his death arose out of and in the course of his employment. Compensation was allowed on the theory of mutual benefit to employee and employer.

In this case Sister Mary Benedict was at the convent during her working hours, where she was required to live and do her work as secretary-treasurer of defendant, St. Mary's Corporation. With no cook present to prepare breakfast, reasonable minds could draw the inference plaintiff had at least

implied consent to prepare food for herself and the other two Sisters with a resulting benefit to defendant and that use of the kitchen by plaintiff was contemplated by the parties.

We hold there was sufficient competent evidence to warrant the commissioner's finding that plaintiff's injury arose out of and in the course of her employment with defendant.

III. Defendant next argues there was no competent evidence in the record to warrant the commissioner's award of medical and hospital expenses. Plaintiff offered statements of medical, hospital and ambulance expenses (exhibits 1 through 7) to which defendant objected on the grounds no proper foundation had been laid or any showing the services were necessary. The parties stipulated that if the proper persons were called they would testify these charges were the fair and reasonable charges for these services rendered. Defendant's counsel stated: "We do not stipulate that they were necessary in this case, however."

Defendant had notice of plaintiff's injury immediately thereafter. It became defendant's duty to furnish reasonable medical, surgical and hospital services. Code section 85.27 provides:

"Professional and hospital services—prosthetic devices. The employer, with notice or knowledge of injury, shall furnish reasonable surgical, medical, osteopathic, chiropractic, podiatrial, nursing and hospital services and supplies therefor. * * *."

Proof of the necessity of the services listed in exhibits 1 through 7, if required, is found in plaintiff's testimony given prior to the offer of the exhibits. She stated:

"I called to the sisters in the next room, and they came out and tried to put me in a more comfortable position. The ambulance was called, and I was taken to Mercy Hospital, arriving at the hospital at about eleven o'clock. In the meantime the doctor had been called. He came to the convent and gave me a hypo and told me to rest there on the floor before calling the ambulance. Dr. Stegman is a doctor in Marshalltown. I went to Mercy Hospital in Marshalltown. After I arrived at the hospital I was taken to the X-ray room. An X ray was taken of my left hip and it was discovered that a bone had been broken.

I was put in bed and placed in traction for three days. Surgery was performed as a result of my fall. I was taken to the operating room and Dr. Stegman put a pin in the broken bone. That would be August 1, I believe. There were no subsequent operations. I was in Mercy Hospital for four months. I was discharged on November 26, 1960. I was transferred to St. Joseph Hospital, Ottumwa. I was placed under Dr. Fox and I received X-ray treatments, physiotherapy treatments, and medical care. I was in the hospital at Ottumwa until July 10, 1961. I was then transferred to our convent at Ottumwa Heights for recuperation until October 1. I was not entirely bedfast from the time of the accident to July 10, 1961. I was up at times in a chair. I started sitting up, I think it was in November. I don't remember the date, sitting in a chair for a short time. I walked for the first time on my own power with no assistance other than a cane probably in April of 1961.

Later plaintiff testified:

"I incurred certain expenses at these hospitals and for these doctors. I have seen the bills which are for services rendered to me as a result of this accident on July 29."

We need not, nor do we, decide whether proof of necessity for medical and hospital expenses is required in view of section 85.27. If required the proof is sufficient to warrant the commissioner's findings on this issue.

Following the well-recognized rule of liberal construction that must be applied in compensation cases, and applying the principles laid down in the cited cases, we conclude there is sufficient competent evidence in the record to warrant each of the commissioner's findings of fact of which defendant complains.

The judgment and order of the district court sustaining the finding of the industrial commissioner is therefore—Affirmed.

All JUSTICES concur.