CITY OF FRANKLIN, Kentucky, Appellant,

v.

DEPARTMENT FOR HUMAN RESOURCES, William Ray Graves, Faye B. Graves, the Ohio Casualty Insurance Co., and Workmen's Compensation Board, Appellees.

DEPARTMENT FOR HUMAN RESOURCES and Ohio Casualty Insurance Company, Cross-Appellants,

v.

William Ray GRAVES, (Deceased), Faye Brown Graves, (widow), City of Franklin, Kentucky, Workmen's Compensation Board, William L. Huffman, Director, Cross-Appellees.

and

William Ray GRAVES, (Deceased), and Faye Brown Graves, (widow), Cross-Appellants,

v.

DEPARTMENT FOR HUMAN RESOURCES, the Ohio Casualty Insurance Company, City of Franklin, Kentucky, Workmen's Compensation Board, and William Huffman, Director, Cross-Appellees.

Court of Appeals of Kentucky.

May 4, 1979.

J. Marshall Hughes, Bowling Green, for appellant and cross-appellee, City of Franklin.

James H. Lucas, Bowling Green, for appellee and cross-appellants, Department for Human Resources, Commonwealth of Kentucky, and The Ohio Casualty Ins. Co.

J. Richard Downey, Franklin, for appellees and cross-appellants, William Ray Graves, Deceased, and Faye Brown Graves, widow.

Before GANT, HOWARD and HOWERTON, JJ.

GANT, Judge.

This workmen's compensation appeal arises from a decision of the Simpson Circuit Court which affirmed an award of the Workmen's Compensation Board. The Board assessed the liability for the work-connected death against the City of Franklin (City) as the employer. The City now brings this appeal. William Ray Graves was a CETA (Comprehensive Employment and Training Act) employee. He was hired by Simpson County Judge Executive, Joe James, who was the agent in Simpson County for the program which was administered by the Department for Human Resources (Department) in the state. Once hired, he was assigned to work for the City on its road crew. Approximately one month after he began work under the program, he was killed when the walls caved in on the ditch in which he was working. His widow filed an adjustment for a claim of workmen's compensation benefits.

Initially, the suit was brought against only the Department for Human Resources and its insurer. After a period of time in which negotiations took place, the insurance company moved the Board to join the City as a party/defendant, and the motion was granted.

Two issues were before the Board—whether Faye Brown Graves's children by another marriage were wholly dependent on the deceased, and who the proper employer was for liability purposes. The Board decided that the stepchildren were dependent and that the City was liable. Only the issue dealing with the employer is here on appeal. There are other sub-issues which will be resolved by a determination of this question.

The CETA program was developed by the United States government to provide opportunities for unemployed and underemployed persons in public service jobs or training. 29 *U.S.C.* § 801, *et seq.* Each state could act as a prime sponsor for counties or cities within its political jurisdiction, but did not qualify on their own under the prime sponsor requisites contained in the statute. 29 *U.S.C.* § 812. In Kentucky, the prime sponsor for the majority of the state is the governor, who has designated the Department for Human Resources as the administrator of the program. The Department has designated county judge executives as

their local representatives to hire personnel that meet the qualifications for employment. In the instant action, Judge James did the hiring for the available jobs in Simpson County. CETA employees could be assigned to any of a number of areas of employment (City of Franklin, Simpson County, Federal Housing Authority, and Franklin-Simpson School District.) Graves was assigned to the City.

According to the testimony in the record, the City directed the actual work done by Graves. His hours and the type of work that was to be done were set by the City. All the particulars of his work duties were directed by the City or its representative. The City compiled his work hours on a bi-monthly basis, and this information was given to the Bureau for Manpower, which forwarded the information to Frankfort, where a check was issued. In essence, he received his pay from the Department for Human Resources.

A CETA employee is to be treated as any other employee in the organization in which he works. Although his pay comes from a different source, all other benefits are to be the same. It is best stated by the enacting statute, 29 *U.S.C.* § 848(a)(4):

> all persons employed in public service jobs under the Title (29 *U.S.C.* § 841–851) will be assured of workmen's compensation, health insurance, unemployment insurance, and other benefits at the same levels and to the same extent as other employees of the employer and to working conditions and promotional opportunities, neither more nor less favorable than such other employees enjoy.

Part of this requires that employees be covered by workmen's compensation. However, the statute does not direct who is to provide the workmen's compensation.

Judge James in his testimony stated that he was aware of the requirement that OSHA and workmen's compensation standards must be met with regard to CETA employees. However, he also stated that he was told that the Department would cover these employees within their workmen's compensation policy. There was no written agreement to this effect. Some question was raised about when the program initially began; the local agencies had signed some agreement in order to become a part of the program. This was brought out in Judge James's testimony, but nothing firm was ever concluded on its existence, and if there was one it was not included as part of the evidence. Had there been an agreement of some sort, it might have elucidated upon the responsibilities of the various parties in this action.

We are of the opinion that the decision of the Board and the circuit court was correct to the extent of assessment of liability. The City controlled and directed all work activities of Graves. Although they did not participate directly in the hiring or paying of the deceased, they kept records of the number of hours he worked and were therefore indirectly in control of his wages. They were under the mandate of the Act and required to treat him as any other employee.

In other jurisdictions, cases of this sort arose during the 1930's and 1940's with respect to government relief programs involving the Works Project Administration and the National Youth Administration; the liability was assessed against the federal agency. *Dempster Mill Manufacturing Company v. Lester,* 131 S.W.2d 254 (Tex. Civ.App., 1935) (WPA), and *Sweet v. Board of Education of Union Free School,* 290 N.Y. 73, 48 N.E.2d 266 (1943) (NYA).

The method of operation under those programs, however, was decidedly different than with CETA. Supervisors were provided from within the program, and the program director decided how and where the individuals would work. There was no exercise of control from outside of the program itself. These cases are of benefit only in their difference from this action.

The only Kentucky case that is closely in point is *Carnes v. Dept. of Economic Security,* Ky., 435 S.W.2d 758 (1968), which was a tort action. There, the employee was hired under the Work Experience and Training Program which, like CETA, provided jobs for unemployed individuals. The parties

there were trying to determine who was the employer for the assessment of liability. However, the question concerned the negligent act of an employee and the employer that would be responsible for that act. Although hired and paid through the Department of Economic Security, the individual worked for the City of Manchester. There it was held that the City of Manchester was responsible as employer for the negligent act of these employees. The court applied the "loaned servant doctrine." In assessing liability against the City of Manchester, the court said:

> In the case now before us, the work was not being performed by, for, or under the control of the department when Carnes' ramp burned. The City of Manchester exclusively had the right to start, stop, and direct the manner in which it was done. The Department was not liable to Carnes. *Id.* at 764.

The same thing can be said with respect to Graves's activity here. The principles of law are somewhat different, but generally we are of the opinion that that case applies here, with one difference. As with the contractor-subcontractor liability, KRS 342.-610(2), the Department could be liable secondarily. If the City had not covered its workers under workmen's compensation, then the Department would be liable. However, we are of course not faced with such a fact situation.

Accordingly, the judgment of the lower court is affirmed insofar as it pertains to the liability of the City for the compensation payments to the employee, and this case is remanded for the purpose of amending the judgment herein to require the City to reimburse the Department or its carrier, Ohio Casualty Insurance Co., for the funeral expenses mistakenly paid.

All concur.