**Beth J. ROUSE, As Administrator of the Estate of John Douglas Rouse, Deceased, Appellee,**

v.

**STATE of Iowa, Appellant,**

**Iowa State Conservation Commission and Chariton Valley R C & D, Defendants.**

No. 84–969.

Supreme Court of Iowa.

June 19, 1985.

Thomas J. Miller, Atty. Gen., and Charles Lavorato, Asst. Atty. Gen., for appellant.

William L. Shelton and Richard L. Ambelang, Chariton, for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, SCHULTZ, CARTER, and WOLLE, JJ.

McCORMICK, Justice.

Judgment for $37,194.22 was entered against the State in this wrongful death action brought pursuant to the Iowa Tort Claims Act by Beth J. Rouse, administrator of the estate of John Douglas Rouse. In this appeal the State contends the trial court erred in rejecting its defense that the decedent was an employee of the state and thus limited to a workers' compensation recovery. *See* Iowa Code § 85.20 (1979). In her cross-appeal the administrator contends the damage award was inadequate. Because we find no basis for reversal in either contention, we affirm the trial court on both appeals.

I. *The State's appeal.* In contending that the trial court erred in finding decedent Rouse was not an employee of the state, the State relies on an asserted error of law. The asserted error is the alleged failure of the court to employ correct factors in determining whether an employer-employee relationship existed. The State argues that if the correct factors were considered the court would have been obliged as a matter of law to find Rouse was a state employee.

Because this case was tried to the court at law, the trial court's findings of fact have the force of a jury's special verdict. If supported by substantial evidence, the findings will not be disturbed. They

are construed broadly and liberally and, in case of ambiguity, are construed to uphold rather than defeat the judgment. We are not bound by trial court determinations of law and are free to decide whether the court's findings were induced by legal error. *Farmers Insurance Group v. Merryweather*, 214 N.W.2d 184, 186–87 (Iowa 1974).

 Ordinarily the determination of the relationship of employer and employee is a question of fact, although the question of the relationship created by a written contract may be one of law for the court. *Hassebroch v. Weaver Construction Co.*, 246 Iowa 622, 627, 67 N.W.2d 549, 552 (1954). The State relies on a theory of implied contract in this case. Thus we can reverse the trial court only if we find that the court's decision was induced by legal error or that the evidence was strong enough to compel any reasonable mind to conclude Rouse was a state employee. We will first recite the relevant evidence and then address the legal issues.

Rouse was killed while working as a participant in a program under the federal Comprehensive Employment Training Act (CETA). *See* 29 U.S.C. §§ 801–822 (1975). The purpose of the federally funded program is to provide job training and skills to unemployed persons. The program is administered by state or local government bodies. The government sponsor enters contracts with entities who need labor performed. Eligible candidates are then referred by the sponsor to the contractor which screens and hires those who fit its needs.

In the present case the program sponsor was the Governor of Iowa who designated the Office of Planning and Programming to act for him. The contractor was defendant Chariton Valley R C & D, a nonprofit organization concerned with human and natural resources development in four southern Iowa counties. Chariton Valley contracted with OPP to employ twenty persons on public service jobs. Among the jobs was a position called "conservation aide." A person in that position was to be "outstationed," which in this case involved assignment of the person by Chariton Valley to perform work for the state conservation commission.

The OPP contract required Chariton Valley to hire persons from the pool of eligible CETA candidates and use them on the jobs described in the contract. Chariton Valley was to maintain all payroll records, pay participants' wages, withhold for tax purposes, and purchase workers' compensation insurance and health insurance. OPP, using federal funds, was to reimburse Chariton Valley for these expenses pursuant to the contract.

Rouse was a CETA applicant who was referred to Chariton Valley R C & D for possible hiring in November 1979. After an interviewing and screening process, Chariton Valley hired Rouse as a conservation aide. From November 13, 1979, until his death on January 14, 1980, Rouse and another CETA participant worked with conservation commission employees headquartered at Lake Rathbun except for one day when Rouse did some work for the Lucas County Historical Society. While outstationed with the conservation commission, he took orders from conservation commission employees and was supervised by them. He was killed on January 14, 1980, while helping them take down a silo which collapsed on him.

Rouse's administrator sued both the State and Chariton Valley in the present wrongful death action. Each defended on the ground it was Rouse's employer. In deciding the case, the trial court found that Rouse was an employee of Chariton Valley at the time of his death and not an employee of the state. Each defendant was attempting to establish itself as Rouse's employer to avoid liability for wrongful death damages. *See* Iowa Code § 85.20.

As recognized by the parties, Rouse could be a state employee for workers' compensation purposes only if he was an employee within the meaning of section 85.61(2) of the workers' compensation statute. Under that provision, an "employee" is "a person who has entered into the em-

ployment of, or works under contract of service ... for an employer." No legal distinction exists between the disjunctive phrases in this definition. For employment to be found, there must be a "contract on the part of the employer to hire and on the part of the employee to perform service." *Henderson v. Jennie Edmundson Hospital*, 178 N.W.2d 429, 431 (Iowa 1970).

The State argues that the trial court erred in stating that Iowa adheres to the "contract test" in determining who the employer is for workers' compensation purposes. Our statute and cases, however, support the trial court's view. We disagree with the court only in its assertion that this view is not shared by a majority of other jurisdictions. *See* 1C A. Larson, *The Law of [Workers'] Compensation*, § 47.10 at 8–231–232 (1982) ("Most acts insist upon the existence of a 'contract of hire, express or implied,' as an essential feature of the employment relation."). The issue here, of course, is whether the trial court was correct about the requirement in Iowa, not whether the court was correct about the law elsewhere.

■ Requiring a contract basis for the employment relationship distinguishes the relationship from the common law master-servant relationship. At common law vicarious liability can be imposed on a master on a theory of the master's acceptance and control of a service that led to a third person's injury. *See id.* The trial court characterized this as a "control test" and was right in finding it inapplicable. Employment for purposes of compensation law is

> a mutual arrangement between the employer and employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between employer and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship. To thrust upon a worker an employee status to which he has never consented would not ordinarily harm him in a vicarious liability suit by a stranger against his employ-

er, but it might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common law damages. This reasoning applies not only to the question whether there is any employment relationship at all, but also to the question whether one of two or more persons is an employer. In such cases, with all the elements of employment having been established as to *some* employer, the issue may be solely whether the particular defendant made a contract with the particular employee.

*Id.* at 8–233–234.

The trial court emphasized the necessity of an employment contract in rejecting the State's argument that Rouse was employed by the conservation commission at the time of his death. The court compared the situation to the facts in a "loaned employee" case, *Muscatine City Water Works v. Duge*, 232 Iowa 1076, 7 N.W.2d 203 (1942). In that case this court held that a loaned employee does not become the employee of the alleged special employer for workers' compensation purposes in the absence of an employment contract between the employee and the borrowing employer. *Id.* at 1084–85, 7 N.W.2d at 207–08. The issue is not decided by determining whose work is being done and who has the right to control how it is done. *See* 1C A. Larson, *supra*, § 48.10 at 8–317–319.

■ The State complains that the court did not apply the five-factor employment test enunciated in *Henderson*, 178 N.W.2d at 431. Those factors include (1) the right of selection, or to employ at will, (2) responsibility for payment of wages by the employer, (3) the right to discharge or terminate the relationship, (4) the right to control the work, and (5) identity of the employer as the authority in charge of the work or for whose benefit it is being performed. The factors are an aid to analysis. The intent of the parties is the overriding element in determining whether an employment contract existed. *Id.* Moreover, the fourth and fifth factors are subject to the

*Duge* holding in loaned employee workers' compensation cases.

■ Although the trial court did not delineate these factors, we believe the court applied them in determining that Rouse was employed by Chariton Valley. In analogizing this case to *Duge,* the court reasoned as follows:

> In this case, after the decedent was accepted into the CETA program, he was interviewed and hired by Chariton Valley R C & D. He was then outstationed to the Iowa State Conservation Commission as a conservation [aide]. Chariton Valley R C & D handled the decedent's payroll, including deductions and insurance and had the final say on whether it kept him on the payroll, assuming he remained eligible for the CETA program. Although the Iowa State Conservation Commission supervised the decedent's day-to-day work, he was not on the payroll of the State of Iowa. He did not contribute to IPERS or have insurance provided by the State. In addition, there was at least one day when he worked for the Lucas County Historical Society instead of the Conservation Commission. There is no evidence that the Iowa State Conservation Commission had the power to remove the decedent from the payroll of Chariton Valley R C & D.
>
> Although it is clear that decedent's day-to-day work activities were controlled by the Iowa State Conservation Commission (e.g. he worked on Conservation Commission land and used its equipment) as in the [*Duge*] case, these factors are not controlling in determining whether there is a contract between the Iowa State Conservation Commission as an employer and the decedent as an employee.

The court did not apply an incorrect legal standard nor did the evidence compel a conclusion that Rouse was a state employee. Nor did the court err in distinguishing *Caterpillar Tractor Co. v. Shook,* 313 N.W.2d 503 (Iowa 1981), as a dual employment case involving the question of which of the two employers the injured person was working for at the time he was hurt.

The State's reliance on CETA cases from other jurisdictions is misplaced. *Thompson v. United States,* 504 F.Supp. 1087 (D.S.D.1980), is a vicarious liability case. The court in *McNeil v. Industrial Commission of Arizona,* 126 Ariz. 579, 617 P.2d 531 (Ariz.Ct.App.1980) merely held that federal regulations deeming a CETA employee to be an employee of the contractor did not override a state law determination concerning who must ultimately provide workers' compensation coverage. In *Sebastian County v. Leyva,* 2 Ark.App. 159, 617 S.W.2d 387 (1981), the court upheld the sufficiency of evidence to support a finding of the dual employment for workers' compensation purposes in circumstances different from those in this case. Finally, in *City of Franklin v. Department For Human Resources,* 581 S.W.2d 358 (Ky.Ct. App.1979), the court applied the loaned employee theory rejected by this court in *Duge* in upholding a determination of liability.

We find no merit in the State's appeal.

■ **II.** *Plaintiff's cross-appeal.* Plaintiff contends the trial court erred in awarding her judgment of $37,194.22 when she introduced an economist's testimony that Rouse would have accumulated an estate with a present value of $1,342,159. As trier of fact, the court was free to accept or reject the expert's testimony in whole or in part. A State expert criticized the testimony of plaintiff's expert in several basic respects and estimated Rouse's anticipated accumulations had a present value of $23,106. Moreover, the record showed that Rouse had previously held only short-term jobs at the minimum wage. Although he was a high school graduate, his academic record was not very good. His monetary assets were nominal, and, contrary to plaintiff's argument, we have no reason to believe the State's expert did not take them into account.

The court's award was within the evidence, and we have no basis to interfere. *See Schmitt v. Jenkins Truck Lines, Inc.,*

170 N.W.2d 632, 665 (Iowa 1969). We find no merit in plaintiff's cross-appeal.

AFFIRMED ON BOTH APPEALS.