Richard D. RAYMON,
Plaintiff–Appellant,

v.

NORWEST BANK MARION,
NATIONAL ASSOCIATION,
Defendant–Appellee.

No. 86–1318.

Court of Appeals of Iowa.

Aug. 26, 1987.

Peter C. Riley and Mary K. Hoefer of the Tom Riley Law Firm, Cedar Rapids, for plaintiff-appellant.

Franklin R. York of White, Stone, Aasgaard & York, Marion, for defendant-appellee.

Considered by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

DONIELSON, Judge.

Plaintiff appeals from summary judgment for defendant in an action for breach of contract and tortious interference with contract. Plaintiff asserts: (1) the claims were not compulsory counterclaims that should have been asserted in a previous foreclosure action; and (2) the judgment in the foreclosure action does not bar either claim on grounds of res judicata. We affirm.

In a previous action involving these parties a judgment of foreclosure was affirmed on appeal as modified by this court. *Norwest Bank Marion v. LT Enterprises, Inc.*, 387 N.W.2d 359 (Iowa App.1986). In that action, commenced in 1981, the Bank sought judgment against LT Enterprises, the mortgagor of the property in question. LT had assigned its interest to a partnership that had, in turn, assigned its interest to Raymon, one of the partners, who was also named as a defendant. In 1983, the Bank amended its petition to show assign-

ment to it of all of LT's rights and assertion of LT's right to contract payments from Raymon. Raymon, in that action, filed a counterclaim for breach of contract based on an allegation that LT, with the Bank's knowledge, had sold the property on terms which prevented him from enforcing the obligations of persons who had purchased from him. A motion to strike the counterclaim was filed by the Bank, which was sustained on the ground that the counterclaim was not timely.

In 1984, Raymon commenced this action at law alleging, first, the same breach of contract that was the basis of the counterclaim that had been stricken in the foreclosure action. A second claim of tortious interference with contract was based on defendant Bank's taking an assignment of LT's contractual rights.

Upon motion the trial court entered summary judgment for defendant Bank, finding that the claims were compulsory counterclaims in the foreclosure action presently barred by res judicata as a result of the judgment in that action. Raymon now argues that his claims were not compulsory counterclaims in the foreclosure action because they had not then matured and did not arise out of the same transaction that was at issue in that case and therefore contends that his claims are not barred by res judicata.

Our scope of review is for correction of errors at law. Iowa R.App.P. 4. The trial court's findings of fact are binding upon us if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We view the evidence in a light most favorable to the judgment and need only consider evidence favorable to the judgment, whether or not it is contradicted. *F.S. Credit Corp. v. Shear Elevator, Inc.,* 377 N.W.2d 227, 232 (Iowa 1985). We are not, however, bound by the trial court's determinations of law and are free to decide whether the trial court's findings were induced by legal error. *Rouse v. State,* 369 N.W.2d 811, 813 (Iowa 1985).

In reviewing the granting of a motion for summary judgment, we view the underlying facts contained in the pleadings and inferences to be drawn therefrom in a light most favorable to the party opposing the motion, and we give to such party the benefit of any doubt as to the propriety of granting summary judgment. *D.R.R. v. English Enterprises, CATV, Division of Gator Transportation, Inc.,* 356 N.W.2d 580, 582 (Iowa App.1984). Our task is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. *Id.* We will reverse the granting of summary judgment if it appears from the record that there is an unresolved issue of material fact. *Id.*

On a motion for summary judgment the moving party has the burden to show the absence of a fact issue. *Tasco, Inc. v. Winkel,* 281 N.W.2d 280, 282 (Iowa 1979). "Even if the facts are undisputed, summary judgment is not appropriate if reasonable minds may draw different inferences from them." *Id.* We have also recognized that a motion for summary judgment is functionally akin to a motion for directed verdict, which should not be granted if reasonable minds can differ on how the issue should be resolved. *Schermer v. Muller,* 380 N.W.2d 684, 687 (Iowa 1986).

Raymon does not necessarily dispute the facts in this case; however, he argues that the trial court incorrectly ruled that the case involved now is barred.

We first examine Raymon's argument that the claims he now is asserting against the Bank were not compulsory counterclaims as the trial court so found.

Rule 29 of the Iowa Rules of Civil Procedure provides:

A pleading must contain a counterclaim for every cause of action then matured, and not the subject of a pending action, held by the pleader against any opposing party and arising out of the transaction or occurrence that is the basis of such opposing party's claim, unless its adjudication would require the presence of indispensable parties of whom jurisdiction cannot be acquired. A final judgment on the merits shall bar such a counterclaim, although not pleaded.

In articulating the guidelines which distinguish a compulsory counterclaim from a

permissive one, the Iowa Supreme Court has stated:

> A claim is a compulsory counterclaim as contemplated by Rule 29 where it arises out of the transaction or occurrence that is the basis of the opposing party's claim if: 1) it is then matured, 2) it is not the subject of a pending action, 3) it is held by the pleader against the opposing party, and 4) it does not require the presence of indispensable parties of whom jurisdiction cannot be acquired.

*Harrington v. Polk County Federal Savings & Loan Association of Des Moines,* 196 N.W.2d 543, 545 (Iowa 1972). The objective of Rule 29 is to avoid a multiplicity of suits and to dispose of all related issues in a single case. *Walters v. Iowa–Des Moines National Bank,* 295 N.W.2d 430, 432 (Iowa 1980); *Capital City Drywall Corp. v. C.G. Smith Construction Co., Inc.,* 270 N.W.2d 608, 611 (Iowa 1978).

Raymon argues that the requirements stated in *Harrington* have not been fully met in this case. He states (1) that his claims were not mature in the first case, and (2) that they did not arise out of the same transaction or occurrence that was at issue in that case.

The first action was filed April 14, 1981. LT's assignment of rights to Norwest Bank, specifically contract payments from Raymon, occurred on March 15, 1983; the Bank filed an amendment alleging such assignment. On March 23, 1983, Raymon filed a resistance to the motion to amend or, in the alternative, requested a continuance. On March 23, 1983, the court approved an amendment to the Bank's petition alleging such assignment of rights. The court granted a continuance and ordered that the pleadings be closed by June 10, 1983. On October 26, 1983, Raymon filed his counterclaim which was struck upon the Bank's motion that it was untimely.

▇ Raymon claims his cause of action in the present case had not matured at the time the first action was filed or at the time the Bank filed its amendment to petition. He claims the damages he incurred as a result of the assignment did not occur until the foreclosure decree was entered in the first case and he lost rights in the property. A cause of action matures when a claimant has sustained actual loss or resulting damage. *Stoller Fisheries v. American Title Insurance Company,* 258 N.W.2d 336, 341 (Iowa 1977). Raymon relies substantially on the case of *Stoller Fisheries,* which held that Stoller's action for tortious interference matured after judgment was entered against Stoller in the first action when his damages accrued upon paying the judgment.

The analysis in *Stoller Fisheries* cannot be applied in the present action based on the following reasons: (1) Raymon alleged in paragraph 6 of his counterclaim filed before the Bank obtained judgment that he had already sustained damages; and (2) Raymon's answers to interrogatories nos. 4, 5, and 6 filed in the present case indicate damages are directed toward the assignment of LT's contract rights and the "starting" and "filing" of the mortgage foreclosure, as opposed to judgment on the mortgage foreclosure action.

In *Walters v. Iowa–Des Moines National Bank,* 295 N.W.2d 430 (Iowa 1980), a similar issue was involved. In that case the court found a counterclaim had matured when the foreclosure action was commenced. In line with the analysis in *Walters,* any damages which Raymon accrued could have and should have been timely pled in the first suit. Iowa cases have consistently held that mere difficulty in ascertaining the amount of damages does not constitute grounds for denying recovery. *Dennett v. City of Des Moines,* 347 N.W.2d 691, 693 (Iowa App.1984); *Palmer v. Albert,* 310 N.W.2d 169, 174 (Iowa 1981). Raymon's contention that his claim had not matured is without merit.

We next address Raymon's argument that his claims did not arise out of the same transaction or occurrence that was involved in the first case.

▇ The test followed by the Iowa Supreme Court as to whether a claim arises out of the same transaction or occurrence was stated in *Harrington,* 196 N.W.2d at

545, as follows: "Is there any logical relation between the plaintiff's claim and the counterclaim?" Norwest Bank proceeded with two causes of action in the first suit: its mortgage foreclosure and its claim to contract payments as assignee of LT. Raymon asserts that there is no logical relationship between Norwest Bank's mortgage foreclosure and Raymon's contract with LT. As assignee of LT, Norwest Bank took the contract subject to all defenses, setoffs, and counterclaims to which LT was subject. *Walters,* 295 N.W.2d at 433. A logical relationship clearly exists between the mortgage foreclosure and the contract payments, both of which were the subject matter of the first suit, thereby resulting in Raymon's claim for damages arising out of the same transaction.

Therefore, based on the criteria set forth in *Harrington* and Rule 29 of the Iowa Rules of Civil Procedure, we find that Raymon's claims in this case were matured in the first case in sufficient time to be made part of that lawsuit; that they were not the subject of any other pending action; that they were the claims of the pleader against the opposing party (plaintiff's and defendant's positions are reversed in each case); and that the claims did not require the presence of any indispensable parties of whom jurisdiction cannot be acquired. Further, Raymon's claims arose out of the same transaction that was at issue in the first case. Accordingly, we affirm the trial court's finding that Raymon's claims in this action were compulsory counterclaims that should have been filed in the first action.

■ We next address Raymon's claim that the doctrine of res judicata is inapplicable. Claim preclusion under the doctrine of res judicata is based on the principle that a party may not split or try his claim piecemeal, but must put in issue and try his entire claim or put forth his entire defense in the case on trial. *B & B Asphalt Co. v. T.S. McShane Co.,* 242 N.W.2d 279, 286 (Iowa 1976); *Swisher & Cohrt v. Yardarm, Inc.,* 236 N.W.2d 297, 299 (Iowa 1975). A final judgment in the first action bars another action by the plaintiff on the same claim even though the plaintiff is prepared in the second action to present other grounds or theories not presented in the first action. *Tigges v. City of Ames,* 356 N.W.2d 503, 508 (Iowa 1984).

■ The first action was filed April 14, 1981, with an amendment referring to the assignment of LT's rights filed March 15, 1983. Raymon was given until June 10, 1983, to file any compulsory pleadings. Raymon's counterclaim based on breach of contract was filed on October 26, 1983, the day trial commenced. The court sustained the Bank's motion to strike it as untimely. Raymon's claims in this action are based on breach of contract and tortious interference with contract. Raymon's breach of contract claim is now barred because the trial court struck it in the first action as being untimely. Raymon's tortious interference claim is also barred since this is only advancing a new theory of recovery which arose out of the same transaction as in the first case. In *Tigges,* 356 N.W.2d at 509, the court held the second cause of action based on tort was barred by claim preclusion, even though the first action was based on breach of contract.

Raymon argues that the trial court's grant of Norwest Bank's motion to strike in the first action was not an adjudication on the merits. However, again in *Tigges,* a dismissal of the first action operated as a bar to the second. A motion to strike should be treated as a motion to dismiss when made with respect to the entire claim. *Bourjaily v. Johnson County,* 167 N.W.2d 630, 632 (Iowa 1969). All dismissals not governed by Rule 215 or not for want of jurisdiction or improper venue, shall operate as adjudications on the merits unless they specify otherwise. Iowa R. of Civ.P. 217.

Raymon relies on *Uttecht v. Ahrens,* 312 N.W.2d 571 (Iowa 1981), which held that a dismissal for failure to timely transfer venue was not a dismissal on the merits. *Uttecht* very simply can be distinguished from the present case: a counterclaim is equivalent to a cause of action, wherein substantive allegations are pled; venue is concerned with procedural aspects of the case. As such, to not timely file a counter-

claim, thereby resulting in its dismissal, would be an adjudication on the merits.

Raymon was obliged to raise all of his various theories of recovery based on the same transaction prior to a final adjudication. He did not do so. We find the court's decision in the first action operated as a final adjudication on the merits and Raymon is now barred from relitigating his claims.

Therefore, since Raymon's claims in this action were compulsory counterclaims under Rule 29 of the Iowa Rules of Civil Procedure and appropriate case law which were not timely raised in the first action, they are now barred by the doctrine of res judicata from being relitigated. We affirm the trial court's decision sustaining Norwest Bank's motion for summary judgment.

AFFIRMED.